Ayers, Appellant, *v.* Morgan.

Argued May 27, 1959.   Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

*Sol Lubin,* with him *Joseph J. Savitz,* for appellant.

*James P. Harris, Jr.,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, October 21, 1959:

On April 20, 1948, the plaintiff in this case, Chester A. Ayers, underwent, in the Wilkes-Barre General Hospital, an operation for a marginal jejunal ulcer. He was discharged from the hospital on May 4, 1948, but the operation did not afford him the relief he had anticipated. On the contrary, he experienced pains in his abdomen which continued for several years. On January 3, 1957, he returned to the hospital for a series of tests, hoping that science might discover the cause for his unceasing discomfort. It did. At the spot which seemed to him to be the fountainhead of his suffering and misery, there was discovered a foreign substance, that is, a sponge. It had been left there by the surgeon, Dr. Philip J. Morgan, who had performed the operation nine years before.

Ayers sued Dr. Morgan in trespass, charging him with negligence in that, having opened him up to remove an ulcer, he then sealed the aperture without first removing a metallic gauze sponge which had been used in the surgery.* The defendant filed an answer denying the charge of negligence and then asked for judgment, raising the affirmative defense of the bar of the

---

* The complaint contained two counts. We are concerned here only with the first. The second count charged Dr. Morgan with negligence in connection with a second operation.

statute of limitations (Act of June 24, 1895, P. L. 236, §2; 12 P.S. §34). The Court of Common Pleas of Luzerne County granted the motion and entered judgment for the defendant. The plaintiff appealed.

Assuming, as we must in this review of the proceedings, that all allegations of fact in the complaint are true,* it would be difficult to arrive at any conclusion other than that Dr. Morgan was negligent in failing to account for all the sponges he had introduced into the body of his patient before he sent him home from the hospital. The only question we have before us is: Did Ayers wait too long to bring his action of malpractice against Dr. Morgan?

The plaintiff contends that the statute of limitations could not take effect until it became a matter of knowledge to him that the surgeon had buried a sponge in his entrails. This he did not learn until January 3, 1957. Was the running of the statute, in view of the circumstances related, tolled until that date? The pertinent feature of the statute reads: "Every suit hereafter brought to recover damages for injury wrongfully done to the person, in case where the injury does not result in death, must be brought within two years from the time when the injury was done and not afterwards. . ."

This statute, as all statutes, of course, must be read in the light of reason and common sense. In its application to a given set of circumstances, it must not be made to produce something which the Legislature, as a reasonably-minded body, could never have intended. The Statutory Construction Act of May 28, 1937, P. L. 1019, Article IV, §52, 46 P.S. §552, states that in ascertaining the intention of the Legislature the courts may be guided by the presumption that "The legisla-

---

\* *Necho Coal Co. v. Denise Coal Co.*, 387 Pa. 567.

ture does not intend a result that is absurd, impossible of execution, or unreasonable."

With so wholesomely logical and intelligent a standard of interpretation, it would be illogical and unintelligent to say that a person who does not know, and cannot know, for example, that a surgeon has negligently left a rubber tube in his body, would be denied damages because his claim for damages was filed, due to delay in learning of the presence of the tube, more than two years after the operation. That precise situation arose in the case of *Byers v. Bacon,* 250 Pa. 564, 566, where the lower court gave binding instructions in favor of the defendant. We reversed, Justice POTTER saying for the Court: "The negligence charged was not in the insertion of the tube, but it was in the failure to remove it at the proper time, or in the failure to give notice of its presence, that it might be removed by another, when it had served its proper purpose. It could hardly have been intended to remain permanently in the body of plaintiff, and he should have been allowed to show when and by whom the tube, which was inserted by defendant, should have been removed."

Thus, in the instant case, the negligence charged was not the use of a sponge but the failure to remove it at the proper time. Surgeons employ all manner of implements in performing their magic of restoring health and well-being to ailing humanity. Able, solicitous and ever-caring as Nature is in rebuilding broken bones, restoring wrecked tissue, and rehabilitating flaccid muscles, the expert hand of the surgeon guides the restorative procedure and, in doing so, he often must use such things as nails, screws, sponges, metallic clips and rubber tubes. If he overlooks removing the nails, unscrewing the screws, taking out the clips, withdrawing the sponges and extracting the tubes, his negligence dates from the time the extrane-

ous item was to have been removed and continues throughout the period he fails to perform his obvious duty. An operation is not completed until the surgeon takes away the tools with which he operates.

On this very phase of a resulting tort action, Justice POTTER said in the *Byers* case: "It may be that good surgical practice required it [the tube] to be kept in the wound after plaintiff was discharged from the hospital and placed under the care of his family physician. If defendant was at fault in permitting the tube to remain in the wound when it should have been removed, or in failing to give notice of its presence, the time when such dereliction of duty occurred should have been shown, as that would constitute the real injury, and would start the running of the statute of limitations. It may have been coincident with the date of plaintiff's discharge from the hospital, but not necessarily so. Then too, it should have been a question for careful consideration, as to whether the statute should properly have been regarded as running against plaintiff, until such time as he could reasonably be charged with knowledge of the fact that the tube had been overlooked and left in the wound."

The question as to when, in a tort action, the statute of limitations begins to run, was considered by this Court in the case of *Foley v. Pittsburgh Des Moines Company*, 363 Pa. 1, 38. Foley was killed on October 20, 1944 as the result of a gas tank explosion which had been erected by the defendant company in September, 1943. Foley's widow filed an action against the defendant company within one year following the date of her husband's death. The defendant contended that the lawsuit was tardily begun because the statute of limitations became authoritative, not on the date of Foley's death, but on the date that the defendant completed the operation of erecting the tank, which, as

stated, was in September, 1943. Our Court rejected this contention and said: "It would seem elementary, however, that a cause of action cannot accrue until an injury is actually inflicted upon the person bringing the suit, and certainly until October 20, 1944 no action of any kind could have been brought by the present plaintiff; it is inconceivable that she should be barred by lapse of time before the time when she could have instituted a suit."

The plaintiff in the case at bar could hardly have launched his lawsuit on the day Dr. Morgan performed the operation because, at that time, no injury was yet inflicted. The injury became a reality when the sponge began to break down healthful tissue within the body of the plaintiff. We said further in the *Foley* case: ". . . a right of action accrues only when injury is sustained by the plaintiff,—*not when the causes are set in motion which ultimately produce injury as a consequence*: Pollock v. Pittsburgh, Bessemer & Lake Erie R. R. Co., 275 Pa. 467, 473, 119 A. 547, 549; Rudman v. City of Scranton, 114 Pa. Superior Ct. 148, 152, 173 A. 892, 894. It follows that plaintiff's suit was brought in time, as the court below properly held." (Italics supplied)

The question as to when the gears of the statute of limitations take hold was considered in another type of case—*Lewey v. Fricke,* 166 Pa. 536. There, the defendant was charged with subterraneously extracting coal from the plaintiff's land by means and methods which cloaked his pilfering from the plaintiff's eyes. The plaintiff did not learn that the defendant was robbing him of his underground treasure until seven years after the criminal deed was done. In 1892 he brought an action in trespass against the defendant but he was met by the defense that since the coal had been taken in 1884 the statute of limitations barred recov-

ery. The trial court agreed and entered judgment for the defendant. The plaintiff appealed. Justice WILLIAMS, speaking for this Court, said that the mischief which the statute of limitations (the one there involved allowed the injured person six years in which to proceed) "was intended to remedy was delay in the assertion of a legal right which it was practicable to assert. The remedy provided was a denial of process to one who had slumbered for six years during which process was within his reach."

But Lewey had not slumbered on his rights. He could not know that his neighbor was undermining him. Justice WILLIAMS pointed out that the owner of coal lands cannot be present in the interior of the earth: "No amount of vigilance will enable him to detect the approach of a trespasser who may be working his way through the coal seams underlying adjoining lands. His senses cannot inform him of the encroachment by such trespasser upon the coal that is hidden in the rocks under his feet. He cannot reasonably be held to be constructively present where his presence is in the nature of things impossible. He must learn of such a trespass by other means than such as are within his own control, and until these come within his reach he is necessarily ignorant of his loss. He cannot reasonably be required to act until knowledge that action is needed is possible to him."

Justice WILLIAMS also said that "to hold that the statute begins to run at the date of the trespass is in most cases to take away the remedy of the injured party before he can show that an injury has been done him. A result so absurd and so unjust ought not to be possible." He ended his learned Opinion with the statement: "We are disposed to hold therefore that the statute runs against an injury committed in or to a lower stratum from the time of actual discovery, or

the time when discovery was reasonably possible . . .
The statute will run against a claim for compensation
from the time the existence of the claim was, or might
have been, known to the plaintiff, the owner and oc-
cupier of the surface."

The judgment was reversed and a new trial ordered.
Is the law to be regarded as being more concerned
about protecting property than protecting health? The
plaintiff in this case was as ignorant of what Dr. Mor-
gan was doing in his abdomen as Lewey, in the coal
case, was unaware of what was being done under his
feet.

In another case, *Scranton Gas & Water Co. v. Iron
& Coal Co.,* 167 Pa. 136, 152, the same Justice WIL-
LIAMS said: "The question in any given case is not
what did the plaintiff know of the injury done him,
but what might he have known by the use of the means
of information within his reach with the vigilance
the law requires of him? . . . When knowledge is im-
possible because of the laws of nature, or because of
the actual fraud of the wrongdoer, the statute runs
from the time of discovery."

Did the laws of nature prevent Ayres from ascer-
taining what was causing the pain in his abdomen?
Certainly he could not open his abdomen like a door
and look in; certainly he would need to have medical
advice and counsel; certainly he would have to be de-
pendent upon those who with appropriate instruments
and devices could pierce the wall of flesh which hid
from his own eyes the cause of his wretchedness.

Both the defendant and the lower court have ap-
parently misevaluated the specific wording of the Act
of June 24, 1895. It seems they regard the crucial
words as reading: "Every suit . . . must be brought
within two years from the time *the act was com-
mitted.*" The statute, however, says that the suit must

be "brought within two years from the time *when the injury was done.*" The injury is done when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable.

The defendant argues in his brief that the true test as to when the statute of limitations begins to run is "when plaintiff could first have maintained his action to a successful result, regardless of the time when the actual damage results." With this statement the defendant practically concedes that the plaintiff must wait until he is made aware of his condition and what caused it, because otherwise how can he pursue an "action to a successful result?" It must be borne in mind that this is not a case where the act of negligence was known to the plaintiff but the extent of the damages which ensued therefrom was not ascertained until after the expiration of the statute of limitations. On the contrary, this is a case where the plaintiff did not know of the act (which eventuated in injury to him) at the time *that* act occurred.

The defendant says further that the "injury wrongfully done to the person" of the plaintiff occurred on April 20, 1948. He argues that "as soon as the plaintiff's incision had been sewn up, plaintiff had been injured as a result of the alleged negligence of the defendant." But it was not the sewing up of the incision which constituted the defendant's negligence; it was his taking off the gauze mask, putting away the rubber gloves, removing his white apron, and walking away, leaving a sponge in his patient's anatomy—and not taking it out. *That* was the negligence.

A plumber who abandons a wrench or other sizeable impediment in a water main, which three years later bursts because of the presence of that impediment, may not successfully argue that the person injured from the bursting may not bring a trespass ac-

tion since two years passed since the wrench was forsaken. While the plumber's careless abandonment of the wrench was the original act which led to the eventual damage, it did not of itself cause the bursting. The accident was caused by the relinquishment of the wrench, plus the incrustation of rust, plus other changes wrought by the passage of time, plus the failure of the plumber to remove the wrench.

The man who buries a time bomb would argue futilely that he could not be held responsible for a resulting death because the explosion and death of his victim did not occur until more than a year after he had placed the bomb.

The lengthening of the period within which actions may be begun is not a novelty in jurisprudence. In a contract action, the plaintiff is not prevented from filing suit after the statute of limitations has expired, if fraud has intervened. In criminal actions the Commonwealth is not barred from proceeding by statutory limitations if the accused has fled the jurisdiction. Laches becomes a barrier to the institution of lawsuits because the injured person has slept on his rights, but if somnolence has not corroded away his claim to recovery, the law welcomes his action to regain what has wrongfully been taken away from him. And in such a situation one may not be charged with dreaming away his right to recover if even the most watchful vigilance could not apprise him of the damage being done him.

In the case of *DiGironimo v. American Seed Co.*, D.C.E.D. Pa., 96 F. Supp. 795, 797, the plaintiff was injured when he was shot by an air rifle which had been illegally sold by the defendant to a minor. The Court said: "In arguing that the action is barred by the two year statute of limitations, 12 P.S. §34, defendant maintains that the period of limitations should be

computed from the time of the alleged negligent act of the defendant, that is, from the time of the sale of the air rifle. However, the statute specifically provides that in cases where the injury does not result in death the suit must be brought within two years 'from the time when the injury was done and not afterwards.' "

When a person is injured by falling over a defect in the pavement, the statute of limitations begins to run from the date of the fall, not from the date the municipality negligently allowed the pavement to become dangerous. (*Aachen & Munich Fire Insurance Co. v. Morton*, 6 Cir., 156 F. 654, 657.)

In this case Ayers became injured when the healthful forces within his body fell over the sponge negligently left by Dr. Morgan on the highway of anatomical normality. Dr. Morgan's actionable negligence stemmed from his failure to timely remove the sponge. This failure constituted a blameworthiness which continued until such time as Ayers learned, or, by the exercise of reasonable diligence, could have learned of the presence of the foreign substance within his body. Ayers avers in the complaint that he did not become aware of the existence of the offending sponge until January 3, 1957. Whether that averment and the other averments can be supported by evidence, only the trial itself can determine. But the plaintiff is entitled by law to have the opportunity to present his evidence.

In the case of *Sly v. Van Lengen*, 120 N. Y. Misc. 420, 198 N.Y.S. 608, a sponge was left in the body of the patient for 2½ years. The Supreme Court of New York held that, despite the applicable statute of limitations, the plaintiff was entitled to maintain her action because the defendant-doctor's negligence consisted as much "in failing to remove the sponge as it did because of the alleged negligent act of the defend-

ant on the day of the operation, when he sewed up the opening without removing the foreign substance."

In the case of *Gillette v. Tucker*, 67 Ohio St. 106, another sponge case, the Supreme Court of Ohio held that "the removal of the sponge was a part of the operation, and in this respect the surgeon left the operation uncompleted."

In *Akridge v. Noble*, 114 Ga. 949, the Georgia Supreme Court said: "It seems to us that the operation begins when the opening is made into the body, and ends when this opening has been closed in a proper way after all appliances necessary to the successful operation have been removed from the body. From the time the surgeon opens with his knife the body of his patient until he closes in a proper way the wound thus made, the law imposes upon him the duty of exercising not only due care, but due skill as well. During the entire time he must not only know what to do, but he must do it in a careful and skillful manner."

In the case of *Burton v. Tribble*, 70 S.W. 2d 503, the defendant-surgeon left in his patient's abdomen a ball of gauze 1½ inches in diameter. Seven years later it was removed. The Supreme Court of Arkansas held that even though the statutory period of limitation had expired, the plaintiff's action had not, because: "Our conclusion is, therefore, that appellee's acts of leaving the ball of gauze in appellant's abdominal cavity and his failure to apprise appellant thereof were such fraudulent concealments and continuing acts of negligence as toll the statute of limitation until appellee performed his duty of removing the foreign substance or appellant learned or should have learned of its presence."

In the case of *Barnett's Administrator v. Brand*, 165 Ky. 616, the Supreme Court of Kentucky said:

294

"The operation begins when the incision is made and ends when the opening has been closed in the proper way, after all the appliances necessary to a successful operation have been removed from the body . . . The removal of the sponges or pads is a part of the operation, and an operation cannot be said to be concluded until such removal takes place."

The defendant argues in his brief that there was no concealment on the part of the defendant, but what greater concealment could there be than hiding a foreign substance within the folds of a patient's intestines while he is asleep and not telling him of this malady-incubating cache for nine years? Of course, it is not contended by the plaintiff that Dr. Morgan purposely and fraudulently interred the sponge within living tissues, nor is it necessary that there be any proof to that effect. The charge against Dr. Morgan is negligence, which only rarely (so far as personal injury cases are concerned) encompasses criminality.

If, as Mr. Ayers charges in his complaint, Dr. Morgan deposited a sponge in his body and failed to remove it in therapeutically good time and, because of the nature of the concealment, the plaintiff was unable to learn of the hidden sponge until after the two year period had expired, he is entitled to proceed with his action.

The judgment of the court below is reversed with a venire facias de novo.

Mr. Justice BENJAMIN R. JONES concurs in the result.

Mr. Justice BELL dissents.

CONCURRING OPINION BY MR. JUSTICE McBRIDE:

I concur wholeheartedly in the result. I reach my conclusion, however, by a somewhat different though not inconsistent path.

It has been argued here that the action was barred by the statute unless brought "within two years from the time when the injury was done and not afterward . . ." and that the injury was done at the time of the surgery, not the date of discovery of the presence of the sponge. Even if this is true, still the result reached by the Court is right. It must be conceded that even at the time the injury was inflicted upon Ayers it as well as its cause was not only unknown to him but was unknowable.

Article I, Section 11, of our Constitution, provides as follows: "All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law . . ."

Statutes of limitations must be read in the light of this provision for the running of time is not the only test of validity of such statutes. They are desirable in that they prevent oppression by forbidding plaintiffs to litigate stale claims and thus compel defense at a time when such defense is no longer practicable and sometimes even impossible. Nevertheless, the restrictions imposed may not be so arbitrary as to preclude a reasonable opportunity for one who has been harmed to make his claim. If the legislature were permitted *absolute* discretion it would not be merely regulating the remedy but would be abolishing it. Cf. *Rodebaugh v. Philadelphia Traction Company*, 190 Pa. 358, 42 A. 953. This may not be done either in a statute which operates retrospectively or one which operates prospectively for in either event it would amount to a denial of justice. The legislature could not have intended such a result.

Although courts will not inquire into the wisdom of a statute, nevertheless, they do have power to declare a statute unconstitutional as applied to a given case,

or, alternatively, to interpret the statute so as to include an essential requirement which would make its application constitutional. I believe this case requires us to adopt this alternative course.

The principle stated in *Smith v. Bell Telephone Co.*, 397 Pa. 134, 153 A. 2d 477, a case involving subsurface conditions, is applicable here. The statutory period runs "from the time of discovery of the cause of the harm or the time when the cause of the harm reasonably should have been discovered, whichever is earlier."

This is not judicial legislation but is instead constitutional interpretation for without it the statute of limitations, as applied to the facts of this case, would be unconstitutional.