## Kushmanich v. Czulada

*Gene E. Goldenzeil,* for plaintiff.
*Mark H. Scoblionko,* for defendant.

MUNLEY, *J.,* June 25, 1992—We have before us for disposition a motion for summary judgment filed by defendants. The statute of limitations was timely pled as an affirmative defense, and a motion for summary judgment was filed.

Plaintiff instituted suit against the defendants by filing a praecipe for a writ of summons on March 4, 1991. The said writ was delivered to the sheriff, and the sheriff was instructed to hold the writ and not attempt service on defendants.[1] The writ, not having been served upon defendants, within 30 days, thereupon expired. On July 11, 1991, plaintiff filed a praecipe to reinstate the summons. The reinstated summons was served upon defendants on July 19, 1991.

Defendants argue that plaintiff did not take the necessary steps to effectuate service of process to toll the statute of limitations vis a vis *Lamp v. Heyman,* 469 Pa. 465, 366 A.2d 882 (1976). Defendant posits that the filing of the praecipe was sufficient to commence the action and toll the running of the statute of limitations, however, by instructing the sheriff to hold the writ, it served to stall in its tracks the legal machinery that had been set in motion. Plaintiff does not contest this argument, and in fact, agrees with defendants, however, plaintiff argues relief from the statute of limitations by virtue of the "discovery rule."

Initially, without reference to the "discovery rule," we determine that a writ of summons is not effective to commence an action and toll the statute of limitations where plaintiff fails to make an effort to effectuate service of

---

1. A note was attached to the sheriff service card, in the court records, stating: "Put on hold per attorney. 3/14/91 D.P."

the writ within 30 days of its issuance. *Watts v. Owens-Corning Fiberglass Corp.*, 353 Pa. Super. 267, 509 A.2d 1268 (1986), *allocatur denied*, 514 Pa. 632, 522 A.2d 559. Thus, assuming arguendo that the statute of limitations ran on June 23, 1991, it would serve as a complete bar to recovery in the instant cause of action.

The principles to be applied when ruling on a motion for summary judgment are well established. Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035(b). In considering a motion for summary judgment, the court must examine the record in the light most favorable to the non-moving party. The court's function is not to decide issues of fact but merely to determine whether any such issues exist. *Taylor v. Tukanowicz*, 290 Pa. Super. 581, 435 A.2d 181 (1981).

There is no genuine issue as to the following facts. On March 2, 1989, plaintiff fell down a flight of stairs, at home, injuring the lumbar area of her back and her right leg and knee. She was treated in the emergency room of Moses Taylor Hospital and released on the same day. Dr. Adrian Morris, plaintiff's family physician, treated her injuries and has continued to treat her for back pain. Dr. Morris scheduled plaintiff for an MRI scan on March 27, 1989, and diagnosed a herniated disk (moderate focal centrally herniated disk) and a bad sprain of the lower back. Plaintiff, in pain and unable to return to work, was referred, by Dr. Morris, to Dr. Ceseare, an orthopedic physician. Dr. Ceseare prescribed physical therapy at Mid-Valley Hospital for approximately six weeks.

On May 2, 1989, plaintiff, still in pain and unable to return to work, commenced treatment with defendants. Plaintiff's treatment consisted of chiropractic manipulations, hot and cold packs and machines for her back. On June 23, 1989, plaintiff stated that while she was receiving a chiropractic manipulation, she experienced a sudden pain in the lower back area; she cried out in pain and defendant terminated the treatment. Immediately afterwards, plaintiff called Dr. Sharma, who was treating her for arthritis, and asked that she be given injections for the pain; no such injections were given. On June 27, 1989, plaintiff returned to defendants for another treatment; such treatment was given via machines with no chiropractic manipulations. Plaintiff's pain did not lessen, in fact, plaintiff alleges that it got worse everyday. Plaintiff canceled her June 30, 1989, scheduled appointment with defendants and called her family physician, Dr. Morris, who hospitalized her. Dr. Carson Thompson, neurosurgeon, attended plaintiff while she was hospitalized. A bone scan was performed and degenerative changes of the lumbar spine were noted. Plaintiff received heat treatments and was placed in a brace. After hospitalization, plaintiff wore the brace for approximately four months, still experiencing some pain. During this time period, she was being treated for such pain by Drs. Thompson, Sharma, Zaydon and Morris.

Plaintiff stated that her back pain continued and her vertebrae started fracturing sometime in 1990. In July of 1991, Dr. Morris sent plaintiff for another MRI and advised her to seek further treatment from Dr. Thompson. On August 27, 1991, plaintiff was hospitalized for back surgery and Dr. Thompson removed three bones from her spine to unpinch a nerve.

Plaintiff argues that she was unaware of her injury and/or that defendants were negligent until July 14, 1989,

when plaintiff had a discussion with Dr. Morris. During this discussion, plaintiff alleges that Dr. Morris informed her that "people with herniated disks should not be manipulated." [T.R.-91.] Plaintiff posits that the statement made by Dr. Morris alerted her, for the first time, that she was injured on June 23, 1989, by defendant's alleged negligent treatment.

At issue, is the possible application to plaintiff's claims of the "discovery rule" first set forth in *Ayers v. Morgan,* 397 Pa. 282, 154 A.2d 788 (1959). The two-year statute of limitations applicable to plaintiff's claim to recover damages is commenced when plaintiff is injured and that injury was caused by another's conduct. 42 Pa.C.S. §5524(2). This two-year period begins to run on the date the injury is sustained, however, when an injury is not readily apparent, the "discovery rule" applies. *MacCain v. Montgomery Hospital,* 396 Pa. Super. 415, 578 A.2d 970, 972 (1990); *Stauffer v. Ebersole,* 385 Pa. Super. 306, 560 A.2d 816 (1989). The "discovery rule" provides that where existence of injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitation period does not begin to run until discovery of the injury is reasonably possible. *Gravinese v. Johns-Manville Corp.,* 324 Pa. Super. 432, 471 A.2d 1233 (1984).

In passing on defendants' motion, "[t]he true test in determining when a cause of action arises or accrues is to establish the time when the plaintiff could have first maintained the action to a successful conclusion." *Argust v. Mackey General Contracting,* 390 Pa. Super. 183, 568 A.2d 255, 257 (1990). The court in reviewing this "accrual" concept, in the context of actions where the "discovery rule" may function to postpone the running of the statute of limitations, notes as a general rule, that

a plaintiff asserting a cause of action is charged with the responsibility of using all reasonable diligence to inform herself of the facts and circumstances upon which the right to recover is based. The "discovery rule" exception to the statute of limitations arises from the inability, despite the exercise of diligence, to determine the injury or its cause. *Pocono International Raceway v. Pocono Produce Inc.,* 503 Pa. 80, 468 A.2d 468 (1983).

Pennsylvania courts have imposed upon plaintiff a duty to use all *reasonable*[2] diligence in ascertaining facts and circumstances upon which any right of recovery may be based, and to institute any action within the prescribed limitations period. *Pasterierik v. Duquesne Light Co.,* 514 Pa. 517, 526 A.2d 323 (1987). As a general rule, "mere mistake, misunderstanding or lack of knowledge is not sufficient to toll the running of the statute of limitations." *Ciprut v. Moore,* 540 F. Supp. 817, 819 (E.D. Pa. 1981), affirmed, 688 F.2d 819, citing, *Walters v. Ditzler,* 424 Pa. 445, 451, 227 A.2d 833, 835 (1967). Accord *Citsay v. Reich,* 380 Pa. Super. 366, 551 A.2d 1096, 1098 (1988). Thus, the question before us, is whether plaintiff knew she was injured prior to July 14, 1989. What might the plaintiff know of the injury done to her by the use of means of information within her reach with the vigilance which the law demands of her?

The "discovery rule" is a creation of case law and our courts have analyzed and explained the kind of knowledge a plaintiff must have to trigger the discovery which starts the limitation period. Similar to the instant matter,

---

2. We applied the Restatement's definition of reasonableness, "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." Restatement, (Second), Torts §283, comment b.

in *Groover v. Riddle Memorial Hospital,* 357 Pa. Super. 420, 516 A.2d 53 (1986), *allocatur denied,* 515 Pa. 600, 528 A.2d 957 (1987), the plaintiff began to suffer pain and loss of control in her right leg immediately upon receiving a painful injection. The court held that the plaintiff knew, or reasonably should have known, that the injection was the cause of her injury upon suffering the symptoms in her leg. The court stated, the act which heralded the possible tort was the painful injection, and the physically objective and ascertainable damage inflicted by the injection was the pain and loss of control of the plaintiff's right leg.

Plaintiffs' failure to exercise due diligence in determining whether they had a cause of action resulted in the granting of a motion for summary judgment in *Bosworth v. Plummer,* 510 F. Supp. 1027 (W.D. Pa. 1981), a diversity case decided under Pennsylvania law. In that case, plaintiffs learned that their daughter had respiratory problems which were the result of the baby's failure to breathe during the first four minutes following delivery. Several months later they learned that their daughter had cerebral palsy. Almost five years later, a physician told the plaintiffs that the injury resulted from events of the labor and delivery rather than from heredity or any physiological defect. Suit was instituted six years and seven months after the birth, but within two years of the date in which the physician opined that the defendant doctor was negligent. In granting the defense motion for summary judgment based upon the statute of limitations, the court stated:

"[W]e find that the 'injury' was the cerebral palsy and the 'operative conduct' was the oxygen deprivation. Therefore, we hold that the two-year limitations period began to run when [plaintiff] learned that [his daughter] had cerebral palsy, that this affliction resulted from oxygen

deprivation immediately following delivery, and that a variety of occurrences, included prolonged labor and a blood clot in the umbilical cord, could have caused the oxygen deprivation. Upon acquiring the last of this information approximately one year after [the daughter's] birth, [plaintiff] had sufficient knowledge about the circumstances surrounding his daughter's injury to initiate an investigation to determine whether or not anyone was legally responsible for that injury. Pennsylvania courts expect potential plaintiffs to exercise reasonable diligence in determining whether or not they have legal remedies for injuries that they have sustained." *Id.* at 1032, citing, *Schaffer v. Larzelere,* 410 Pa. 402, 405, 189 A.2d 267, 269 (1963).

Focusing on the plaintiff's awareness of the physical symptoms of her injury, we are disposed to hold, that the statute began to run from the time when discovery was reasonably possible on June 23, 1989, the day of the alleged injury or at the latest, July 5, 1989, when plaintiff was discharged from the hospital. The discharge summary stated that plaintiff had a possible compressed fracture of the lumbar spine. The fact that plaintiff did not pinpoint the precise medical cause until July 14, 1989, does not prevent the triggering of the statute. *Carns v. Yingling,* 406 Pa. Super. 195, 594 A.2d 337 (1991) (plaintiff is on notice of a potential claim when a diagnosis is made); *Held v. Neft,* 352 Pa. Super. 195, 507 A.2d 839 (1986) (actual knowledge of negligence is not required for the statute to begin to run).

Additionally, plaintiff argues that she relied on defendants comments to her that the pain she experienced on June 23, 1989 was "normal," that she was very tight and had to be loosened up. This argument is without merit in light of the fact that plaintiff terminated treatment with defendants on June 30, 1989, and was hospitalized

under the care of another physician. Obviously the pain was not "normal."

In *DeMartino v. Albert Einstein Medical Center, N.D.*, 313 Pa. Super. 492, 460 A.2d 295 (1983), summary judgment was granted in a medical malpractice action and plaintiff in opposing the motion, alleged that it was not until a visit to another physician that he was advised that his condition was the result of improper treatment. In rejecting plaintiff's contentions, the court held that once plaintiff is aware or should reasonably have become aware that medical treatment has caused personal injury, the statute begins to run. *DeMartino* at 502. 460 A.2d at 300. Accord, *Levenson v. Souser*, 384 Pa. Super. 132, 557 A.2d 1081 (1989), *allocatur denied*, 524 Pa. 621, 571 A.2d 383 (court rejected argument that limitations period did not begin to run until the plaintiff was first informed by a physician of the complication she was experiencing).

In *Held, supra*, plaintiff was given intravenous medication while undergoing surgery, the medication caused an arthritic condition to develop in her hand. Plaintiff was told by defendant doctor that the severe pain in her hand and arm was the result of several insertions of the IV needle into her hand rather than the medication. The defendant doctor concealed the true cause of plaintiff's injury, thus the statute of limitations was deemed not to have run until plaintiff left defendant doctor's care. However, it is clear from the opinion that the statute of limitations would have begun to run when the IVs were administered, had it not been for the doctor's concealment. The rationale for this holding was, that at the time of the surgery, plaintiff was clearly aware of

the injury and that it was caused in some way by the IV procedure. *Held* at 203, 507 A.2d at 842. It was at this point that the court found that a reasonable person should have pursued medical advise.

In the matter sub judice, with regard to the chiropractic manipulations of June 23, 1989, plaintiff alleges that she had severe pain during and after the treatment. This is quite unlike the classic case where defendant's act is not known of by plaintiff or does not produce symptoms for a period of time. *Ayers, supra.*

In view of the obvious and virtually uninterrupted chain of events following the incident of alleged negligence on June 23, 1989,[3] we find that plaintiff as a matter of law, must be charged with discovery of the causal relationship between the injury and operative act before July 14, 1989. The operative conduct of the defendants which heralded the possible tort was the chiropractic manipulation, the injury was immediately felt and the cause thereof should have been known to plaintiff. Thus, plaintiff's failure to exercise due diligence in determining whether or not she had a cause of action results in the granting of defendants' motion for summary judgment.

ORDER

And now, June 25, 1992, defendants' motion for summary judgment is hereby sustained.

---

3. Plaintiff stated that she cried out in pain during a chiropractic manipulation on June 23, 1989, she called Dr. Sharma for injections for the pain, she called Dr. Morris, who hospitalized her on June 30, 1989. While hospitalized, Dr. Thomas diagnosed a compressed fracture in the spine. Finally, plaintiff stated that she was in continual pain since the June 23, 1989, incident.