[J-81-2020] [MO: Donohue, J.]
IN THE SUPREME COURT OF PENNSYLVANIA
WESTERN DISTRICT

RENEE' A. RICE

v.

DIOCESE OF ALTOONA-JOHNSTOWN,
BISHOP JOSEPH ADAMEC (RETIRED),
MONSIGNOR MICHAEL E. SERVINSKY,
EXECUTOR OF THE ESTATE OF BISHOP
JAMES HOGAN, DECEASED, AND
REVEREND CHARLES F. BODZIAK

APPEAL OF: DIOCESE OF ALTOONA-
JOHNSTOWN, BISHOP JOSEPH ADAMEC
(RETIRED), MONSIGNOR MICHAEL E.
SERVINSKY, EXECUTOR OF THE
ESTATE OF BISHOP JAMES HOGAN,
DECEASED

: No. 3 WAP 2020
:
:
: Appeal from the Order of the
: Superior Court entered June 11,
: 2019 at No. 97 WDA 2018,
: reversing the Order of the Court of
: Common Pleas of Blair County
: entered December 15, 2017 at No.
: 2016 GN 1919, and remanding.
:
: ARGUED: October 20, 2020
:
:
:
:
:
:
:
:
:
:
:

# DISSENTING OPINION

JUSTICE WECHT                      DECIDED: JULY 21, 2021

The Majority holds as a matter of law that Renee Rice, a clergy-abuse victim,
cannot rely on the discovery rule in her suit against the Diocese of Altoona-Johnstown.
The Majority reasons that Rice knew she was abused and knew that her abuser was a
priest within the Diocese. Today's holding conflicts with our Court's discovery rule
precedents, and will deprive plaintiffs of their right to have a jury resolve disputed factual
questions. I respectfully dissent.

The history of Pennsylvania's discovery rule can be traced to *Lewey v. Fricke Coke
Co.*, 31 A. 261 (Pa. 1895). The defendant in that case mined the plaintiff's land and

removed subterranean coal without the plaintiff's knowledge. The plaintiff discovered the theft seven years later and sued the defendant. Thus, the issue before the Court was whether the statute of limitations began to run on the date of the defendant's alleged theft or the date that the plaintiff discovered it. In siding with the plaintiff, we explained that:

> The law does not require impossibilities. It recognizes natural conditions, and the immutability of natural laws. The owner of the surface cannot see, and because he cannot see the law does not require him to take notice of, what goes on in the subterranean estates below him . . . . No amount of vigilance will enable him to detect the approach of a trespasser who may be working his way through the coal seams underlying adjoining lands. His senses cannot inform him of the encroachment by such trespasser upon the coal that is hidden in the rocks under his feet. He cannot reasonably be h[e]ld to be constructively present where his presence is, in the nature of things, impossible. He must learn of such a trespass by other means than such as are within his own control, and, until these come within his reach, he is necessarily ignorant of his loss.

*Id.* at 545, 547.

In the decades since *Lewey*, our Court has applied discovery rule principles in many areas of law, including in the medical malpractice context.[1] In *Nicolaou v. Martin*, 195 A.3d 880 (Pa. 2018), for example, a plaintiff waited more than a decade to sue several physicians who had failed to diagnose her with Lyme disease. The plaintiff received treatment from many providers, each of whom either failed to diagnose her entirely or misdiagnosed her with multiple sclerosis. Suspecting that she had Lyme disease, the plaintiff eventually saw a nurse practitioner who specialized in that illness. The nurse practitioner told the plaintiff that she "probably" had Lyme disease and began treating her with antibiotics. Even though some of the plaintiff's symptoms improved after taking the antibiotics, she waited three more years to sue her prior physicians. The trial court granted summary judgment in favor of the physicians, finding that the plaintiff knew or

---

[1] *See, e.g., Ayers v. Morgan*, 154 A.2d 788 (Pa. 1959) (applying the discovery rule in a "sponge left behind" case).

should have known of the defendants' negligence given that the nurse practitioner opined that she "probably" had Lyme disease and given that her condition began to improve with antibiotic therapy.

On appeal, we explained that, in general, factual issues surrounding whether a plaintiff relying upon the discovery rule exercised reasonable diligence should be submitted to a jury. *Id.* at 893 ("[B]ecause the reasonable diligence determination is fact intensive, the inquiry is ordinarily a question for the jury."). Accordingly, we held that the lower courts improperly invaded the jury's "fact-resolution and inference-drawing functions" by concluding, as a matter of law, that the plaintiff should have known that she had Lyme disease after she began to improve from taking antibiotics.[2] *Id.* at 895.

Despite *Nicolaou*'s unanimous holding that questions regarding whether a plaintiff exercised reasonable diligence should be resolved by juries rather than judges, the Majority today adopts the reasoning of two contrary Superior Court decisions: *Meehan v. Archdiocese of Phila*delphia, 870 A.2d 912 (Pa. Super. 2005) and *Baselice v. Franciscan Friars Assumption BVM Province, Inc.*, 879 A.2d 270 (Pa. Super. 2005). In *Meehan*, a group of plaintiffs who were abused by Catholic priests (and in one case a nun) sued the Archdiocese of Philadelphia. The plaintiffs alleged that the diocese, among other things, afforded known child abusers unrestricted access to minors, provided child

---

[2]     In the Majority's telling, the accrual date in *Nicolaou* "could not be determined as [a] matter of law by the court" because of the plaintiff's "lengthy history of attempted contradictory diagnosis and treatment." Majority Opinion at 20. That framing is misleading. The Majority attempts to present *Nicolaou* as an outlier case, where jury fact-finding was only necessary because of an unusually complex fact pattern. In truth, however, the result in *Nicolaou* should be the result in most cases, since issues of notice and reasonable diligence normally must be submitted to a jury. *Nicolaou*, 195 A.3d at 893. It is only when reasonable minds could not possibly differ regarding whether the plaintiff exercised reasonable diligence that summary judgment is appropriate. *Id.* at 894; *see also id.* at 895 ("To find the discovery rule inapplicable, the Superior Court was required to undertake fact-resolution and inference-drawing functions, which are preserved for the jury.").

abusers with unrestricted use of church property, promoted known child abusers within the church hierarchy, and transferred child abusers without notifying parishioners of their history. In seeking to rely upon the discovery rule, the plaintiffs alleged that they did not discover the diocese's involvement until 2002, when the diocese acknowledged allegations of sexual abuse against some of its priests, and the president of the United States Conference of Catholic Bishops published statements regarding the Catholic Church's response to the victims of clergy abuse. Thus, the plaintiffs argued, they could not have discovered the diocese's role in their abuse until 2002.

The Superior Court, while acknowledging that "the point at which the complaining party should reasonably be aware that he has suffered an injury is an issue of fact to be determined by the jury,"[3] nevertheless concluded that the discovery rule did not apply to the plaintiffs' claims as a matter of law. In the *Meehan* court's view, reasonable minds could not differ regarding whether the plaintiffs exercised reasonable diligence to discover the diocese's involvement. This was so, the court explained, because:

> the plaintiffs knew they were injured, knew the identity of the primary cause of their injury, knew their abusers were employees of the Archdiocese of Philadelphia, and knew the abuses took place on church property, yet the plaintiffs conducted no investigation into any cause of action against their abusers or into any other aspect of the matter. It is undisputed that the plaintiffs were aware that the Archdiocese employed their abusers and that the abuses all occurred on church property. These facts alone were sufficient to put the plaintiffs on notice that there was a possibility that the Archdiocese had been negligent. Neither the plaintiffs' lack of knowledge of the Archdiocese's conduct, nor the plaintiffs' reluctance, as members of the Catholic Church, to investigate the possible negligence of the Archdiocese of Philadelphia after having been abused by one of its priests or nuns, tolls the statute of limitations when the plaintiffs had the means of discovery but neglected to use them. Therefore we determine, as a matter of law, that the discovery rule is inapplicable and does not toll the statute of limitations in this matter.

---

[3]     *Meehan*, 870 A.2d at 921 (cleaned up).

*Meehan*, 870 A.2d at 921.[4]

Both *Meehan*'s analysis and today's decision embracing it plainly conflict with our holding in *Nicolaou*. *Meehan's* rationale fails to account for the situation in which a plaintiff is aware of her injury but unaware of the defendant's connection to it. Yet the discovery rule, as this Court has explained it, should assist such plaintiffs. *See Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005) ("The discovery rule originated in cases in which the injury or its cause was neither known nor reasonably knowable."); *id.* ("As the discovery rule has developed, the salient point giving rise to its application is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause."); *see also In re Risperdal Litig.*, 223 A.3d 633, 640 (Pa. 2019) ("The discovery rule will toll the applicable statute until a plaintiff could reasonably discover the cause of his action, including in circumstances where the connection between the injury and the conduct of another are not readily apparent.").

The underlying rationale of *Meehan* is that victims of sexual abuse necessarily are "on notice" that they may have a cause of action against their abuser, thus distinguishing these cases from those involving retained surgical sponges or subterranean-coal theft. But *Meehan*'s rationale does not fit with Rice's specific claims against the Diocese. Rice is not arguing she was unaware that Fr. Bodziak abused her. Her contention is that, despite her own reasonable diligence, she did not and could not discover that the Diocese: (1) committed fraud by assigning her abuser to serve as her pastor despite his history of molesting young girls; and (2) engaged in a decades-long cover up to protect its own reputation.

---

[4]     *Baselice* involved claims virtually identical to those in *Meehan*, and the Superior Court embraced the same reasoning in that case.

The Majority's conclusion that Rice failed to exercise reasonable diligence in investigating the Diocese's role in her attack is based on nothing more than the fact that Rice knew that she was assaulted on church property by a priest employed by the Diocese. *See* Majority Opinion at 20-21. This analysis dramatically oversimplifies the reasonable diligence inquiry. As we explained in *Nicolaou*, "courts may not view facts in a vacuum when determining whether a plaintiff has exercised the requisite diligence as a matter of law, but must consider what a reasonable person would have known had he or she been confronted with the same circumstances that [the plaintiff] faced at the time." *Nicolaou*, 195 A.3d at 894. Furthermore, "the objective reasonable diligence standard is 'sufficiently flexible . . . to take into account the differences between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question.'" *Id.* at 893 (quoting *Fine*, 870 A.2d at 858).

The Majority replaces these nuanced, fact-specific jury questions with a bright-line rule that plaintiffs who are aware of the primary cause of their injury are necessarily "on notice" of potential secondary tortfeasors.[5] This newly created rule finds no support in our precedent. And while it is true that, prior to the release of the grand jury report, Rice "did nothing"[6] to investigate whether the Diocese played a role in her sexual assault, the Majority fails to consider that a jury might well conclude that a reasonably diligent plaintiff of Rice's age, experience, and circumstances would not have launched an investigation into whether the Diocese intentionally sheltered and effectively abetted known child

---

[5]     *See* Majority Opinion at 21 ("Because her claims for damages against the Diocese are based on Bodziak's alleged conduct, she was on inquiry notice regarding other potentially liable actors, including the Diocese, as a matter of law.").

[6]     *Id.*

abusers.[7]  Nevertheless, the Majority declares—with all of the same misplaced confidence of the lower courts that we disapproved in *Nicolaou*—that the facts here are so clear that reasonable minds could not differ regarding whether Rice acted reasonably diligently.  We said that this judicial usurpation of the jury's fact-finding role was wrong in *Nicolaou*, and we should say that it is wrong here too.

There can be no policy justification for today's decision either.  Submitting to a jury the question of reasonable diligence would not prevent the Diocese from arguing, as it does successfully before this Court today, that any reasonable person in Rice's position would have discovered that the Diocese was actively concealing sexual abuse from the mid-1970s until the release of the grand jury report in 2016.[8]  But the Majority, insisting that it knows for certain how every reasonable juror would come down on the issue, relieves the Diocese's lawyers of that unenviable task.  Suffice it to say I am unpersuaded by the Majority's crystal-ball gazing.

Put simply, this Court's precedent clearly instructs that "the point at which the complaining party should reasonably be aware that he has suffered an injury is a factual issue best determined by the collective judgment, wisdom and experience of jurors."

---

[7]  It is worth remembering that Rice was a young child at the time of the alleged assaults, and the defendants were her primary educators, not only through the church but also while she attended McNelis Catholic School.  During this period, Rice also cleaned the rectory, played the parish organ, and sang at masses.  Furthermore, Rice asserts in connection with her fraudulent concealment argument (which the Majority dismisses based upon the same "inquiry notice" rationale) that the defendants taught her to trust and obey priests, including Fr. Bodziak.  *Rice v. Diocese of Altoona-Johnstown*, 212 A.3d 1055, 1073 (Pa. Super. 2019).

[8]  *See id.* at 1066 ("When the Diocesan Defendants make this argument to a jury, perhaps jurors will agree that Ms. Rice had notice of the frauds and conspiracy that facilitated, hid, and protected child predators like Fr. Bodziak. . . . Whether Ms. Rice exercised reasonable diligence, prior to the release of the Grand Jury Report, is a factual question over which reasonable minds might differ."); *cf. In re Risperdal Litig.*, 223 A.3d at 652 (noting that submitting issues of notice and diligence to the jury is not a guarantee that it will accept the plaintiff's position).

*Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000) (cleaned up).  Today's decision regrettably retreats from that principle.  I respectfully dissent.

Justice Todd joins the dissenting opinion.