2025 PA Super 162

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| CLARISSA MARIE KIESSLING | : | No. 886 MDA 2024 |

Appeal from the Order Entered May 24, 2024
In the Court of Common Pleas of Adams County Criminal Division at
No(s): CP-01-CR-0001015-2023

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| SHERRI RENEE DEPASQUA | : | No. 887 MDA 2024 |

Appeal from the Order Entered May 28, 2024
In the Court of Common Pleas of Adams County Criminal Division at
No(s): CP-01-CR-0001014-2023

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| STEVEN LEROY MURPHY | : | No. 888 MDA 2024 |

Appeal from the Order Entered May 28, 2024
In the Court of Common Pleas of Adams County Criminal Division at
No(s): CP-01-CR-0001013-2023

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

OPINION BY BOWES, J.:  **FILED: JULY 28, 2025**

The Commonwealth appeals from the order dismissing with prejudice the criminal information filed against Steven Leroy Murphy, Clarissa Marie Kiessling, and Sherri Renee Depasqua (collectively "Appellees").  We affirm.

The Commonwealth initiated the above-cited criminal cases following a grand jury presentment ("Presentment") returned by the Forty-Ninth Statewide Investigating Grand Jury.  That Presentment recommended that Appellees be charged with two counts each of endangering the welfare of a child ("EWOC") in relation to two minor children, Z.M. (born August 2017) and I.M. (born February 2019).  As outlined in the Presentment, during the relevant period between February 2019 and May 2020, Murphy, Kiessling, and Depasqua were employed by Adams County Child and Youth Services ("ACCYS") as caseworker, supervisor and assistant administrator, respectively.  In that capacity, Appellees provided protective services to the children in accordance with the Child Protection Services Law ("CPSL"), 23 Pa.C.S. §§ 6301-6388.

The Presentment outlined the history of the case thusly:[1]

---

[1]  The Investigating Grand Jury Act defines a Presentment as "[a] written formal recommendation by an investigating grand jury that specific persons be charged with specific crimes."  42 Pa.C.S. § 4542.  The trial court expressly incorporated the Presentment into the certified record for all three cases. However, it denied the Commonwealth's request to further supplement the certified record with two data storage devices, commonly referred to as thumb drives, that included the testimony, exhibits, and documents presented to the
*(Footnote Continued Next Page)*

I.M. was born at just 27 weeks with the presence of cocaine, opiates, and THC in her system. As a result, a general protective services referral was made. ACCYS commenced an investigation and obtained emergency protective custody of I.M. on February 12, 2019. Upon I.M.'s discharge from the hospital, [Mother] failed to adhere to a separate safety plan implemented by ACCYS regarding her other daughter, Z.M. (DOB: August 24, 2017), who was also taken into protective custody at that time. Dependency cases were initiated in Adams County and ACCYS obtained legal and physical custody of the children on February 28, 2019.

At the direction of ACCYS, the children were placed with resource parents, or foster parents, through Family United Network. The resource parents were Courtney and Kevin McCann of Mechanicsburg, Cumberland County. Mrs. McCann had previously been employed as a caseworker with Dauphin County Children and Youth Services. Throughout placement, Mrs. McCann was employed as a trauma social worker at Penn State Hershey Medical Center.

. . . .

After the children were placed with her family, and before they were reunified with [Mother], Mrs. McCann had direct contact with [Mother] on multiple occasions both in her own home and at various visitations and appointments for the children. She registered repeated concerns about [Mother] to Murphy, Kiessling and/or DePasqua through email, in-person meetings and submission of documents. The concerns expressed by Mrs. McCann about [Mother] included perceived limited cognitive functioning, anxiety, possible domestic abuse, an inability to manage both children at the same time without assistance, difficulty in maintaining a schedule of visits and appointments, frequently missed or tardy appearances at medical appointments for I.M., often followed by conflicting excuses given by [Mother]. In a memo from Mrs. McCann to ACCYS dated October 15, 2019, Mrs. McCann outlined her frustration that [her] concerns were not

_____

grand jury. *See* Order, 6/21/24, at 1. The court made clear that it would immediately provide the information upon the request of this Court. *Id*. at 1-2. As discussed further in the body of this memorandum, it is unnecessary to review the grand jury testimony because the existing record is sufficient to affirm the trial court's order dismissing and quashing the information.

being taken seriously and that she was concerned about reunification. She wrote, ''As a professional in this field, I have tried to look at the reunification efforts diplomatically and fair, but have struggled to describe this work as anything else but shallow and mediocre, setting these children up for failure and to return to care. Mrs. McCann indicated that on most occasions, ACCYS either failed to respond to her expressed concerns or was dismissive of them.

Grand Jury Presentment No. 23, 6/29/23, at unnumbered 5-6.

Notwithstanding Mrs. McCann's criticism of the ACCYS caseworkers assigned to Mother's case and her apprehensions regarding Mother's parenting ability, a view shared by various service providers that interacted with the family, the dependency court reunited the family during February 2020. Significantly, as to Appellees' failure to relay the various concerns to the dependency court, the Presentment determined, "the concerns expressed . . . to [Appellees] were either not provided to the court or minimized by ACCYS representatives, particularly Murphy." ***Id***. at 9-10. (cleaned up).

Three months after the family reunified, ACCYS received a ChildLine general protective service report concerning Mother's alcohol intoxication at a social gathering. The Presentment outlined the relevant facts and the ACCYS investigation thusly,

The reporting source, who was anonymous, stated that on May 16, 2020, she was present at a party attended by [Mother] . . . and the children. The report indicated that in the presence of the children, [Mother] was drinking moonshine or a clear alcohol, became intoxicated and belligerent, vomited and eventually passed out. It was reported that [Mother] did not know where she was or how she got to the party. One of the children, identified as a three year old, reportedly kept asking [Mother]

what was wrong. Finally, it was reported that someone took [Mother] and the children home.

An after-hours caseworker responded to [Mother's] home after receiving the report on May 21, 2020. The caseworker indicated that at that unannounced visit, no alcohol was found at [Mother's] residence, [Mother] denied the allegations, and the children appeared safe. [Mother] was not drug-tested at the time of the unannounced visit.

DePasqua is listed as the supervisor on the May 21, 2020 referral. She listed several action items to be taken in response to the referral. In the action items, DePasqua neither requested an immediate random drug screen of [Mother], nor directed Kiessling or Murphy to report the referral nor the May 16, 2020 incident to the Court at the review hearing scheduled to occur on May 22, 2020. Both Kiessling and Murphy received a copy of the ChildLine referral prior to appearing in court that day and DePasqua had also been advised of the details of the referral prior to her appearance at the May 22 proceeding. No one from ACCYS, most notably Murphy or Kiessling, ever attempted to verify through witness. . . interviews, other than [Mother], whether the allegations contained in the May 21, 2020 referral were valid.

Grand Jury Presentment, 6/29/23, at 12.

During a prescheduled permanency review hearing the following day, Appellees did not inform the trial court of the ChildLine report or their ensuing investigation or request that Mother submit to a court-ordered drug and alcohol screening. Accordingly, the children remained in Mother's physical custody with the trial court retaining supervision. Approximately seven days later, Mother murdered fifteen month-old I.M. by shaking her and inflicting blunt-force trauma. Again, the Presentment provides additional information:

[Mother] admitted to inflicting the injuries to I.M. by grabbing her out of her crib by her arm, holding I.M. around her torso and shaking her three or four times because [Mother] was frustrated, upset and wanted a few minutes to herself. [Mother] admitted

- 5 -

that the night before, she used marijuana, alcohol, Percocet and Suboxone. [Mother] also tested positive for a constellation of drugs and alcohol the same day when drug tested by a case worker from ACCYS, who responded to [Mother's] home. I.M. was flown by medical helicopter to Penn State Hershey Medical Center where she eventually died on May 31, 2020 from her injuries. Medical records and an autopsy report indicated that upon presentation to the hospital, L.M. was assessed to have multiple bruises on her forehead, various parts of her face, upper lip, ears, and right upper chest area near her clavicle. Various testing revealed that I.M. suffered a fracture to her right clavicle, a right frontal skull fracture, left hemispheric and right parietal subdural hematomas (commonly known as brain bleeds), frank multiple retinal hemorrhages of the right eye and multiple retinal hemorrhages and retinal detachment in her left eye. Several treating and consulting experts concluded that the constellation of injuries were inconsistent with the account provided by [Mother], would not have been the result of normal play, could not have occurred as a result of a waist high drop of I.M. to the floor, but were consistent with I.M. being subjected to multiple non-accidental traumatic injuries such as shaken with force by adult strength and combined with blunt force (sudden acceleration/deceleration of the brain with impact).

*Id*. at 13-14.

As a result of the Presentment, on August 1, 2023, approximately three years after the foregoing events, the Commonwealth charged Appellees with two counts each of EWOC.[2] Appellees each waived their rights to appear at a

---

[2] The affidavit of probable cause appended to the criminal compliant adopted the Grand Jury Presentment as follows:

On 06/29/23, the 49th Statewide Investigating Grand Jury ("Grand Jury") issued Presentment No. 23 ("Presentment"). It recommends that criminal charges be filed against Steven Murphy, Clarissa Kiessling and Sherri Depasqua for violations of the Crimes Code of Pennsylvania.

*(Footnote Continued Next Page)*

formal arraignment, the charges were bound over for trial, and on October 23, 2023, the Commonwealth filed at each criminal action number both notice of its intent to try the three cases jointly and the following two-count information alleging that Appellees engaged in criminal behavior between February 6, 2019 and May 29, 2020:

COUNT I:

ENDANGERING THE WELFARE OF CHILDREN -(Felony I)

The Actor, being a parent, guardian or other person supervising the welfare of female juvenile, I.M., a child under 18 years of age, knowingly endangered the welfare of said child by violating a duty of care, protection or support, specifically by failing to advise the supervising court of multiple concerns about the female juvenile mother's inability to parent safely and therefore resulting in the death of female juvenile, I.M., in violation of the Pennsylvania Crimes Code, Act of December 6, 1972, 18 Pa.C.S. Section 4304(a)(I).

---

The Presentment was accepted by the Honorable Richard A. Lewis, Supervising Judge of the 49th Statewide Investigating Grand Jury by Order dated 06/29/23.

Having read and reviewed the Presentment, and after having participated in this investigation and considering all the facts and circumstances, we are adopting the Presentment and incorporating it fully into this Affidavit of Probable Cause (A copy of the Presentment is attached hereto). Based upon our review of the testimony given before the Grand Jury and the documents produced for the Grand Jury, we believe that the testimony of the various witnesses is accurately summarized in the Presentment and that the records referred to in the Presentment are stated accurately.

Affidavit of Probable Cause (Kiessling), 8/1/23 at 1. The Commonwealth's criminal complaints and supporting affidavits of probable cause against each Appellee presented identical allegations of criminal conduct. For ease of discussion, we cite for reference only those documents filed against Kiessling.

COUNT 2:

ENDANGERING THE WELFARE OF CHILDREN --(Felony I)

The Actor, being a parent, guardian or other person supervising the welfare of . . . female juvenile, Z.M., a child under 18 years of age, knowingly endangered the welfare of said child by violating a duty of care, protection or support, specifically by failing to advise the supervising court of multiple concerns about the female juvenile mother's inability to parent safely and the ongoing risk of serious injury or death to Z.M., in violation of the Pennsylvania Crimes Code, Act of December 6, 1972, 18 Pa.C.S. Section 4304(a)(I).

Criminal Information, 10/23/23 at 1.

Invoking the immunity provision outlined in 23 Pa.C.S. § 6318, Appellees each filed motions to quash and dismiss the criminal information on March 8, 11, 13, and 2024, respectively. The Commonwealth's response asserted that the immunity provision did not afford Appellees immunity from criminal liability because, *inter alia*, they failed to provide services under the CPSL by withholding critical information from the dependency court, *i.e.*, they failed to advise the court about Mother's inability to parent safely.

The trial court disagreed, and on May 28, 2024, it entered a single order granting Appellees' requests for relief and "quashed and dismissed [the information filed] against each of the three defendants, with prejudice." Trial Court Order, 5/28/24. Essentially, the court concluded that Appellees' immunity from prosecution attached to the alleged conduct occurring during the course and scope of their employment at ACCYS. **See** Trial Court Opinion, 5/28/24, at 3. It reasoned, in pertinent part, as follows:

The primary [criminal allegations] against these three defendants [does] not [concern] reunification, but what or wasn't done as a result of [the] ChildLine report of May 21, 2020. The report was anonymous and not made until five days later [concerning] allegations of intoxication of Mother on May 16, 2020. A caseworker immediately made an unannounced visit to Mother's home. Mother denied the allegation, the children appeared safe, and no alcohol was located. Again, nothing mentioned in any way was directed at the mother regarding physical abuse towards the children. The hearing before the Dependency Judge was the very next day, after the alleged report and in-house investigation by the caseworker[.]

The bottom line here [is]: Are the three defendants at the points between February 2020 and May 21, 2020, acting and providing services as authorized by law? Yes. Were the acts by a caseworker sent to the house on May 21, 2020, to investigate the anonymous report of an alleged incident of May 16, 2020 an employee providing services as authorized by law? Yes. Were there any indications other than the mother's shortcomings, that would indicate at that moment that the children were in danger of physical abuse by the mother - No. Did both parents have a lengthy history of drug or alcohol abuse- Yes. Had the parents participated in D&A counseling, education and showed recent clean results – Yes.

Trial Court Opinion, 5/28/24, at unnumbered 3-4 (cleaned up, some punctuation altered).[3]

In anticipation of the ensuing appeal, the Commonwealth filed a motion to supplement the record "with evidence that will allow the Superior Court to engage in meaningful appellate review," presumably the evidence presented

---

[3] The trial court also invoked the rationale employed by its sister jurisdiction in **Commonwealth v. Coyne**, 23-MD-268 (Lackawanna County), which is currently pending on appeal before this Court. However, that matter is distinguishable from the case at bar insofar as it concerns the failure to report child abuse as expressly mandated by the CPSL, a criminal charge that was not filed against Appellees.

to the grand jury. Motion to Supplement the Record, 6/14/24, at 2. As noted, the trial court adopted the Presentment but declined to supplement the record with the testimony and exhibits absent an order from the Superior Court. Thereafter, the Commonwealth filed the instant appeal from the order dismissing the criminal information and complied with the trial court's directive to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which it reiterates on appeal as follows:

> I. Did the lower court err in finding Defendants were immune from prosecution pursuant to 23 Pa.C.S. § 6318?
>
> II. Did the lower court err in denying the Commonwealth's request to supplement the record?

Commonwealth's brief at 6.[4]

At the outset, we address the Commonwealth's assertion that the trial court erred in denying its motion to supplement the certified record with all the evidence adduced during the grand jury proceeding. It posits, "[A] just determination of [Appellees'] hotly contested immunity claim would then require consideration of additional relevant facts . . ., including those obtained during the criminal investigation but not recited in the . . .[P]resentment." Commonwealth's brief at 34 (footnote omitted). While the Commonwealth frames its position as an alternative argument to be considered only if its primary challenge fails, we confront this issue first and confirm that our review

---

[4] The Commonwealth filed the identical brief at each of the respective docket numbers. Appellees filed a single, consolidated brief in this matter.

is limited to the existing record as it is informed by the factual recitation in the grand jury Presentment that was specifically incorporated into the affidavits of probable cause and endorsed by the affiant as an accurate summary of the grand jury testimony. Affidavit of Probable Cause , 8/1/23 at 1.

To address this aspect of the Commonwealth's argument, we begin with a brief primer outlining the composition, purpose, and authority of an investigating grand jury. Pursuant to the Investigating Grand Jury Act, a statewide grand jury is tasked with investigating organized crime, public corruption, or both involving more than one county in the Commonwealth. *See* 42 Pa.C.S. § 4544. Once convened, the grand jury is empowered "to issue a presentment with regard to any person who appears to have committed within the county or counties in which such investigating grand jury is summoned an offense against the criminal laws of the Commonwealth." *See* 42 Pa.C.S. § 4548. Should the grand jury determine upon the basis of evidence presented to it that a presentment is warranted, the presentment must be approved by a majority of the grand jury's full membership, which is typically twenty-three voting members, before it is submitted to the supervising judge for its acceptance. *See* 42 Pa.C.S. §§ 4545, 4551(a). Thereafter, the Commonwealth files a criminal complaint based on the Presentment. 52 Pa.C.S. § 4541(e).

Instantly, the Commonwealth proffered an array of evidence to the grand jury, but the Presentment that forms the predicate probable cause in the criminal complaint reflects only the portion of the evidence that garnered the approval of at least one-half of the voting members of the grand jury. Hence, as outlined in its "findings of fact" the Presentment constitutes the body of the evidence that we are confident the jury accepted in exercising its statutory authority to recommend criminal charges against Appellees based upon their alleged failure to inform the dependency court of the potential risks to the children's safety. As it is beyond cavil that appellate courts do not engage in fact-finding, there is no need to supplement the certified record with evidence that the grand jury heard but did not affirmatively adopt. *See BouSamra v. Excela Health*, 210 A.3d 967, 980 (Pa. 2019) ("[I]t is not an appellate court's function to engage in fact-finding."). Accordingly, the trial court did not err in denying the Commonwealth's motion to supplement the record for this appeal.

Turning to the merits of the Commonwealth's appeal, we note the applicable standard of review. Generally, "[t]he decision to grant, or deny, a motion to quash a criminal information or indictment is within the sound discretion of the trial court and will be reversed on appeal only where there has been a clear abuse of discretion." *Commonwealth v. Renninger*, 269 A.3d 548, 556 (Pa.Super. 2022) (cleaned up)(citation omitted). When reviewing an order granting a motion to dismiss a criminal information, the

appellate court accepts the Commonwealth's averments as true, examining the evidence and reasonable inferences derived therefrom in the light most favorable to the Commonwealth. **Commonwealth v. Lambert**, 244 A.3d 38, 41 (Pa.Super. 2020).

While we ultimately must assess the trial court's exercise of discretion, the crux of Appellees' assertions requires us to interpret the CPSL to determine whether Appellees are immune from prosecution by virtue of their employment by a county agency. That issue presents a question of law, which we review *de novo*. **Renninger**, 269 A.3d at 562 ("A challenge concerning the application of a statute . . . presents a question of law for which our standard of review is *de novo* and our scope of review plenary."). Statutory interpretation is, of course, conducted in accordance with the Statutory Construction Act:

> Pursuant to that Act, "[t]he object of all statutory interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). When the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. **Id**. § 1921(b). When, however, the words of a statute are not explicit, a court may discern the General Assembly's intent by examining considerations outside of the words of the statute. **Id**. § 1921(c). In addition, when construing a statute, we must, if possible, give effect to all of its provisions. **Id**. § 1921(a).
>
> The Statutory Construction Act also instructs that, in ascertaining the intention of the General Assembly in enacting a statute, several presumptions may be used. **Id**. § 1922. Among those presumptions is that "the General Assembly intends the entire statute to be effective and certain." **Id**. § 1922(2). We also may presume that the General Assembly does not intend absurd

- 13 -

or unreasonable results. *Id*. § 1922(1). As this Court wisely stated over sixty years ago, to avoid such results, we "must read [statutes] in the light of reason and common sense*." Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788, 789 (1959). [Further], we may presume that the General Assembly does not intend to violate the Constitution of the United States or this Commonwealth. 1 Pa.C.S. § 1922(3).

*Id*. at 890 (citations altered).

This case turns on the application of § 6318 in relation to the Commonwealth's wide-ranging allegations of criminality involving both the investigation of suspected child abuse under the CPSL and the more routine, but allegedly inadequate, provision of services over a fifteen-month period between February 2019 and May 2020.

The CPSL extends immunity in the following situations:

§ 6318. **Immunity from liability**

(a) General rule.--A person, hospital, institution, school, facility, agency or agency employee acting in good faith shall have immunity from civil and criminal liability that might otherwise result from any of the following:

    (1)    Making a report of suspected child abuse or making a referral for general protective services, regardless of whether the report is required to be made under this chapter.

    (2)    Cooperating or consulting with an investigation under this chapter, including providing information to a child fatality or near-fatality review team.

    (3)    Testifying in a proceeding arising out of an instance of suspected child abuse or general protective services.

    (4)    Engaging in any action authorized under section 6314 (relating to photographs, medical tests and X-rays of child subject to report), 6315 (relating to taking child into

protective custody), 6316 (relating to admission to private and public hospitals) or 6317 (relating to mandatory reporting and postmortem investigation of deaths).

(b) Departmental and county agency immunity.**--An official or employee of the department or county agency who** refers a report of suspected child abuse for general protective services to law enforcement authorities or **provides services as authorized by this chapter shall have immunity from civil and criminal liability that might otherwise result from the action**.

(c) Presumption of good faith.--For the purpose of any civil or criminal proceeding, the good faith of a person required to report pursuant to section 6311 (relating to persons required to report suspected child abuse) and of any person required to make a referral to law enforcement officers under this chapter shall be presumed.

23 Pa.C.S. § 6318 (emphases added).[5]

The Commonwealth contests that immunity extends to Appellees. While the Commonwealth's main issue is composed of several sub-arguments, its overarching position is easily reduced to two primary components: (1) the plain language of § 6318(a) and (b) does not apply to Appellees' alleged failure to act; and (2) regardless of the statutory language, policy concerns weigh against extending immunity to Appellees under the facts alleged. *See* Commonwealth's brief at 15-30. We address these assertions *seriatim*, and reject both.

---

[5] The CPSL defines "county agency," as used in subparagraph (b), as "[t]he county children and youth social service agency[.]" 23 Pa.C.S. § 6303.

The Commonwealth first asserts that the trial court erred in dismissing the information against the respective Appellees based upon the application of the immunity provision outlined in § 6318(a) because the grounds for their criminal charges fall outside of the scope of activities delineated in § 6318(a)(1)-(4). *See* Commonwealth's brief at 19-20. It continues that, even if one of the § 6318(a) subparagraphs is applicable, Appellees' alleged conduct was so egregious that it precluded the presumption that they acted in good faith, a position which necessitates an objective assessment of Appellees' actions. *Id*. 20-21. For the following reasons, we disagree.

To the extent that the Commonwealth's prosecution is premised on Appellees' testimony in a proceeding "arising out of an instances of suspected child abuse or general protective services," *e.g.*, failing to advise the supervising court of the pending ChildLine investigation against Mother during the May 2020 dependency hearings, Appellees are protected by the immunity provision of § 6318(a)(3). In this regard, we also reject the Commonwealth's alternate assertion that, even if Appellees' conduct is covered by § 6318(a)(3), their behavior objectively was so appalling that it rebuts the presumption of good faith extended to mandatory reporters in § 6318(c) like Appellees. *Id*. at 20-21. The Commonwealth contends, in pertinent part, that Appellees failed to "provide the dependency court with information regarding [Mother's] parental shortcomings[.]" *Id*. at 21. It concludes, Appellees' "knowing failure to perform [an] adequate and appropriate investigation and

to inform the dependency court of vital information of which they were aware bespeaks their bad faith and is sufficient to rebut [the] presumption of good faith." *Id*.

Notwithstanding the Commonwealth's protestations of Appellees' bad faith in failing to provide testimony to satisfactorily inform the dependency court of its investigation of Mother's behavior, there is no indication in the facts that the Commonwealth set forth in the Presentment, as adopted by the criminal complaint, that Appellees' omission objectively was so conspicuously flagrant that it requires negating the good-faith presumption. Indeed, in contrast to any bad-faith allegation, as outlined *supra*, the Presentment's findings relating to the Appellees' investigation of the May 16th incident indicated that a caseworker made an immediate, unannounced visit to the residence and confirmed that the children appeared safe. **See** Grand Jury Presentment, 6/29/23, at 12.

The Commonwealth does not address this aspect of the Presentment or assert that the testimony the agency presented to the dependency court regarding any aspect of suspected child abuse was perjurious, objectively deceptive, or of such nature that rebuts the presumption of good faith. Instead, it simply criticizes Appellees' response to the ChildLine report and for neglecting to advise the dependency court of its newly-initiated investigation. As the Commonwealth specifically adopted the Presentment in filing the criminal complaints, the foregoing findings of fact concerning Appellees'

immediate investigation and confirmation that the children appeared safe with Mother are fatal to its instant assertion of bad faith. ***See Lambert***, 244 A.3d at 41 (in reviewing motion to dismiss, appellate court accepts Commonwealth's averments as true.) Accordingly, this argument must fail.

More importantly, regardless of the Commonwealth's contentions that Appellees' conduct did not warrant the presumption of good faith, Appellees are protected under the broader immunity provisions outlined in § 6318(b), which states, in pertinent part: "An official or employee of the department or county agency who . . . provides services as authorized by this chapter shall have immunity from civil and criminal liability that might otherwise result from the action." 23 Pa.C.S. § 6318(b). Critically, unlike the narrow protection afforded by § 6318(a), which is based expressly on the "agency employee acting in good faith," the statutory language extending immunity in § 6318(b) simply does not implicate the good-faith requirement. Indeed, even in challenging the applicability of § 6318(b) herein, the Commonwealth does not assert, much less provide any legal authority, for the proposition that immunity afforded pursuant to § 6318(b) is subject to rebuttal. ***See*** Commonwealth's brief at 21-25. Instead, as discussed at length, *infra*, the Commonwealth maintained that immunity did not attach because Appellees did not "provide services authorized by the CPSL" and if they did provide such services, it would be contrary to public policy to extend immunity in this case. ***Id***. at 21, 25-30.

Turning to the Commonwealth's explicit challenge to the court's application of § 6318(b), we are not persuaded by the contention that the criminal allegations against Appellees did not relate to the provisions of services to the family.[6]  Specifically, we reject the groundless argument that the criminal charges concerned "the provision of information to the dependency court" (as opposed to a service to the family) and that Appellees' "failure to furnish the court with all necessary and relevant information amounts to an **inaction** that logically cannot be equivocated with the affirmative act of 'providing services.'" *Id*. at 23-24 (emphasis in original).

We begin by addressing the portion of the information that relates specifically to Appellees' response to the May 21, 2020 ChildLine referral, the ensuing investigation, and the decision to forego either demanding a drug screen from Mother or informing the dependency court of the days-old ChildLine referral when the court fashioned its determination that the children are safe in Mother's care.  As developed in the affidavit of probable cause, this aspect of the criminal charges flowed from Appellees "failing to advise the supervising court of multiple concerns about the female juvenile [M]other's inability to parent safely and the ongoing risk of serious injury or death" Criminal Information, 10/23/23, at 1.

_____

[6] The Pennsylvania District Attorneys Association submitted an *amicus* brief wherein it similarly asserted that § 6318(b) only protects caseworkers' actions rather than the omissions or failures to act that the Commonwealth alleged herein.  For the reasons explained *infra*, this argument is unconvincing.

Section 6362(a) of the CPSL specifically tasks county agencies with the responsibility of "receiving and investigating all reports of child abuse made pursuant to" the CPSL. Here, the ACCY caseworker investigated the anonymous ChildLine referral concerning Mother's intoxication in the presence of her children. There was no allegation of physical abuse. During the ensuing unannounced in-home visit later that evening, Mother denied the allegation, no alcohol was found, and the children appeared safe. Accordingly, the caseworker did not demand a urine screening at that juncture or inform the dependency court of the ChildLine report, the brief investigation, or its ultimate assessment that the children were not at risk. As it is axiomatic that Appellees' decisions and actions relating to their response, investigation, and assessment of the ChildLine referral fell within the scope of their risk assessment obligations under the CPSL, it is equally obvious that the CPSL extends to them immunity from prosecution for those services. Accordingly, the trial court did not err in concluding that Appellees are immune from prosecution for anything that relates to their involvement in the May 2020 ChildLine investigation.

The larger question concerning Appellees' general duties in the county agency is more involved. The trial court concluded broadly that immunity attached simply because Appellees were performing their jobs as agency caseworkers. However, CPSL immunity does not attach as a feature of their employment but as a characteristic of the functional nature of their

performance. That is, immunity attaches where Appellees are "providing services as authorized by this chapter," *i.e.* furthering the purpose of the CPSL.

Instantly, the Presentment, criminal complaint, and information allege that Appellees engaged in criminal behavior that does, in fact, implicate the provision of services authorized by the CPSL and the Commonwealth is seeking to prosecute them for those precise actions. Indeed, the Presentment notes that the children were placed in the protective custody of ACCYS because of a general protective referral, the criminal complaint charged Appellees with specific allegations of failing to advise the supervising court of Mother's inability to parent safely, and the information asserted that those failures led to the death of I.M. and the continuing risk of death to Z.M. **See** Criminal Information, 10/23/23 at 1. As all those assertions involved services Appellees provided under the CPSL, we do not disturb the trial court's conclusion that immunity attached based on the Commonwealth's theory of criminal liability.

Next, having found that § 6318(b) affords immunity to Appellees in this case, we turn to the Commonwealth's several policy-based arguments that challenge the extension of immunity notwithstanding the clear and unambiguous language of § 6318(b). First, the Commonwealth asserts that compelling policy considerations, such as Appellees' "blatantly criminal acts committed in the course of" providing services, preclude immunity.

Commonwealth's brief at 25. The Commonwealth supports this argument with two concededly hyperbolic hypotheticals involving a caseworker sexually assaulting a child or corrupting the morals of a minor during visitation. *Id*. at 25-26. It reasons, "the General Assembly cannot have intended to immunize county agency employees who commit crimes while 'providing services' under the CPSL." *Id*. at 26. Relatedly, the Commonwealth contends that a plain-language application of § 6318(b) conflicted with the intent of the general assembly in enacting the CPSL insofar as it would grant immunity to a caseworker who knowingly placed a child in a dangerous environment. *Id*. at 28-30.

These assertions fail for numerous reasons, the primary cause being that, under our rules of statutory interpretation, we do not look to policy consideration where the language is unambiguous.[7] *See*, *e.g*., 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). Furthermore, the hypotheticals involving a caseworker's misconduct miss the mark because they conflate immunity from liability based on the delivery of services under the CPSL with an independent criminal act that is

_____

[7] For identical reasons, we reject the Commonwealth's penultimate assertion that the application of § 6318(b) immunity in this case is inconsistent with the intent of the General Assembly to protect children from abuse because it immunizes "actions or inactions [that] place children in danger." Commonwealth's brief at 30.

- 22 -

separate and distinct from the caseworker's employment. As accurately phrased by Appellees in highlighting the Commonwealth's defective reasoning as it relates to the instant case, "the actual providing of services--and whether they were adequate-- is what is alleged to be criminal, not an independent criminal act apart from Appellees' performance of job duties." Appellees' brief at 35.[8]

Similarly, in relation to the theoretical scenario that would apply § 6318(b) immunity to protect a caseworker who placed a child in danger while providing services under the CPSL, the hard truth is that a vital public benefit, such as encouraging caseworkers to report suspected child abuse, frequently will guide the legislature to countenance granting immunity to a wrongdoer in order to protect the blameless. The Third Circuit cogently highlighted this principle in discussing "the purpose of according absolute immunity to" criminal prosecutors,

> Although conferring absolute immunity obliges courts to sometimes deny relief to those with valid claims against dishonest or malicious government officials, the underlying logic is that it is ultimately better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation[.]

---

[8] The County Commissioners Association of Pennsylvania and the Pennsylvania Children and Youth Administration submitted an *amicus* brief that articulated this principle thusly: "[T]he 'hyperbolic examples . . . would likely fall outside of the course of employment given they are different in kind from that authorized by the CPSL[.]" *Amicus* brief at 10.

***B.S. v. Somerset County***, 704 F.3d 250, 261 (3rd Cir. 2013) (citation and internal quotation marks omitted). This same reasoning supports extending immunity to the perpetrator outlined in the Commonwealth's imaginary scenario in order to shield an innocent caseworker from criminal liability. Hence, the Commonwealth's hypotheticals and policy arguments are unconvincing.

In sum, § 6318(b) affords immunity from liability "that might otherwise result from that action" to county agency employees who provide services authorized by the CPSL. The criminal information asserted that Appellees engaged in various behaviors over a fifteen month period that constituted EWOC. Some of that conduct, such as the allegations concerning the reporting and investigating suspected child abuse and providing protective services to the children, clearly involved the provisions of services under the CPSL. Pursuant to the clear and unambiguous language of § 6318(b), Appellees are immune from prosecution for alleged crimes arising from the provision of those services. Accordingly, we affirm the trial court order dismissing and vacating the criminal complaint.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/28/2025