J-A07003-25

2025 PA Super 201

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
:
v. :
:
:
:
:
SADIE (O'DAY) COYNE, AMY : No. 187 MDA 2024
HELCOSKI, ERICK KRAUSER, BRYAN
WALKER, and RANDY RAMIK

Appeal from the Order Entered January 12, 2024
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s): CP-35-MD-0000268-2023

BEFORE: BOWES, J., OLSON, J., and STABILE, J.

OPINION BY BOWES, J.: **FILED: SEPTEMBER 11, 2025**

The Commonwealth appeals from the January 12, 2024[1] order quashing

and dismissing the criminal complaints filed against Sadie (O'Day) Coyne[2],

Amy Helcoski, Erick Krauser, Bryan Walker, and Randy Ramik (collectively

_____

[1] The appeal was not argued before this Court until March 11, 2025. Mindful of the legal maxim "justice delayed is justice denied," we are compelled to explain that the fourteen-month gap was due, in large part, to the granting of three separate thirty-day extensions to file briefs, one being awarded to the Commonwealth and two to Appellees, and a one-month lull in resolving a Rule to Show Cause concerning the finality of the order on appeal.

[2] Although the criminal complaints misidentified Coyne as Sadie O'Day, we refer to her as Sadie (O'Day) Coyne, which is how the trial court identified her in the order on appeal.

"Appellees").[3]  We affirm in part, vacate in part, and remand for further proceedings.

On June 27, 2023, the Scranton Police Department charged Appellees, five employees or former employees of the Lackawanna County Office of Youth and Family Services ("OYFS"), with multiple counts each of endangering welfare of children ("EWOC") and failure to report suspected child abuse pursuant to § 6319(a), graded as a felony of the third degree.  The charges were based on various allegations that Appellees willfully failed to report obvious incidences of physical abuse, sexual abuse, and serious physical neglect over several years involving three separate families.

Scranton Police Detective Jennifer Gerrity prepared the affidavits of probable cause that outlined the pertinent facts underlying each of the respective criminal complaints.  Gleaning the relevant information from those documents, we offer the following summary of the Commonwealth's allegations of fact to support its charges against Appellees, beginning with Coyne and Helcoski.

---

[3] Insofar as the trial court concluded that Appellees are immune from prosecution as a matter of law, the order dismissing the criminal charges is properly before this Court as a final appealable order.  ***See Commonwealth v. Fitzgerald***, 284 A.3d 465, 470 (Pa.Super. 2022) ("Since this case involves a trial court dismissing a Commonwealth case, which was ready to proceed, thereby denying review on the merits, we find that the resulting ruling was final.").

The Commonwealth charged Ms. Coyne with five counts each of EWOC and failure to report child abuse based upon her oversight of the protective services that OYFS provided to two families between December 2020 and December 2022. Helcoski was the caseworker assigned to one of those families, who had three children under six years of age, I.S. (d.o.b. 5/19), X.S. (d.o.b. 6/20), and D.S. (d.o.b. 8/21).

OYFS had an extended history with the family of I.S., X.S., and D.S. stemming from services the agency provided to the children's older siblings in 2012. Coyne supervised protective services since January 2021. While she did not interact directly with the family, she managed the caseworkers, including Helcoski, who was assigned to the case in July 2022. The family lived in a one bedroom apartment with as many as fifteen cats. The older children shared a futon with their parents and D.S. slept in a crib. The residence was infested with bed bugs, reeked of cat waste, and was ultimately condemned. In addition to subjecting the children to squalor, the family refused recommended early intervention services to address the three children's developmental delays and routinely neglected their medical care, as outlined in the following examples.

During July 2021, the family transported I.S. to the hospital with a spiral arm fracture, which the attending physician reported as suspicious for abuse. Helcoski's predecessor interviewed the child's father, who stated that I.S. fell from the futon. However, after the medical staff rejected the proffered

explanation for the injury, the caseworker noted the need to have the matter reviewed by a forensic doctor. No such review occurred. Instead, the case notes indicated "no current concerns" and "no recommended follow up appointment." Criminal Complaint (Coyne I), 6/27/23, Affidavit of Probable Cause, at 10-11 (pagination supplied). Nonetheless, despite the agency's inaction, the hospital filed a ChildLine referral based upon the mechanisms of the injury and the suspicious explanation.[4]

Approximately one year later, the physician treating then-nearly-one-year-old D.S. for both macrocephaly, an abnormally large head circumference, and plagiocephaly, the flattening of an infant's head frequently caused by prolonged time resting in one position, contacted the agency to report that parents failed to attend the child's medical appointments and refused to reschedule. *Id*. at 13. Later, the same physician noted the parents rejected a neurology referral to address the child's increasing head circumference, mental delays, and a developing nystagmus (rapid, uncontrollable eye movements) in her right eye. *Id*. at 13-14. In addition to these specific examples of medical neglect, the affidavits of probable cause also delineated incidences where the parents refused to address I.S.'s noticeably small amount of body fat and poor weight gain, and discounted the possibility that all three children contracted parainfluenza. *Id*. at 14-15. Detective Garrity

---

[4] The certified record does not disclose the disposition of this ChildLine referral.

charged that, rather than proffering protective services to ensure the children's safety, Coyne and Helcoski ignored the signs of serious physical neglect and allegedly submitted the case for closing prior to confirming that the family had left the agency's coverage area following their eviction from the condemned apartment. *Id*. at 15.

The other family that Coyne supervised had two children, C.M. (d.o.b. 2/12) and L.M. (d.o.b. 6/13), who resided with their parents and eight dogs. During the period that OYFS provided protective services to C.M. and L.M., the family relocated several times because shortly after moving to a home, it would be condemned as inhabitable. The residences were commonly inundated with animal waste, infested with insects, marred by broken windows, and lacked basic utilities. In addition to those deplorable physical conditions, the family had insufficient food and the children were frequently unsupervised and chronically truant. Indeed, multiple people who encountered the family reported to either ChildLine or OYFS that C.M. and L.M. were subjected to serious physical neglect, physical abuse, and sexual abuse. As to the latter allegation, the children's mother apparently alerted OYFS about her concerns that an adult male household member had previously assaulted a child and C.M. informed a different caseworker that the male once instructed his paramour to "hump" him in C.M's presence. Criminal Complaint (Coyne II), 6/27/23, Affidavit of Probable Cause, at 20 (pagination supplied). However, following its investigations, OYFS repeatedly determined

that the reports were unfounded. Indeed, in relation to the foregoing allegation of sexual abuse, the referral was ultimately deemed invalid, indicating that "the children did not disclose sexual abuse." *Id*. Coyne approved the referral's closure without services. *Id*. These facts track the Commonwealth's general accusations against Coyne, whom Detective Gerrity opined ignored "[t]he pleas for help from the community for the children[.]" *Id*. at 22.

The third and final family enmeshed in this appeal consisted of a single mother, R.G. and her three children, A.M. (d.o.b. 9/09), Ai.M. (d.o.b. 2/12), and R.M. (d.o.b. 8/13). OYCS provided the family services between June 2015 and June 2023. Walker initially supervised the assigned OYCS caseworker, Krauser, and later supervised Ramik after Krauser was removed from the case in September 2022. During the relevant period, the agency investigated myriad reports of suspected child abuse and neglect but determined that none was founded. The mother, R.G., suffered from untreated mental health problems and was hampered by substance abuse. As with the children in the families discussed above, referrals were submitted to OFYS asserting that A.M., A.I.M., and R.M. were subjected to deplorable living conditions, chronic truancy, lack of appropriate medical care, and shortages of food. One referral indicated, *inter alia*, that R.G. smoked marijuana with A.M. and supplied her with the drug. R.G. denied the allegation, and OYFS deemed the referral unfounded.

A.M. suffered from mental health problems, experienced suicidal ideations, and engaged in self-mutilation, and other high risk behaviors such as flirting with adult men. R.G. took no action to protect her adolescent daughter. On one occasion in which A.M. threatened to administer herself a fatal dose of insulin, Mother was believed to have refused to seek the appropriate mental health care for the child "because she didn't want to be stuck [in the hospital] for hours." Complaint (Krauser), 6/27/23, Affidavit of Probable Cause, at 16 (pagination supplied). During March of 2022, OYFS discovered that then-twelve-and-one-half year-old A.M. was pregnant. She subsequently disclosed having had multiple sexual partners. As Detective Gerrity articulated in the affidavit of probable cause, Appellee Krauser reacted to A.M.'s pregnancy by stating, "I honestly don't know how a teen pregnan[cy] warrants a OYFS referral." *Id*. at 11. In contrast to Krauser's flippant response to this crisis, however, Detective Gerrity reported that A.M.'s "therapist advised Krauser that A.M. should have been hospitalized previously" due to her erratic behavior. *Id*.

In September 2022, Ramick replaced Krauser as the assigned caseworker. The following month, R.G. died in the residence, which had been deemed unfit for human occupancy. A.M., A.I.M., and R.M. were discovered in the home with an adult half-sister who did not live with the family. OYFS was notified, and Ramik responded to the scene. Focusing on finding a responsible guardian for A.M., A.I.M., and R.M., Ramik contacted the

children's biological father even though he had been identified previously as an indicated perpetrator of sexual abuse against A.M. Although A.M. confirmed the prior assaults and feared going with her Father, Ramik discounted the child's allegations as unfounded, but he ultimately placed the children with their adult half-sister. Detective Gerrity described the situation thusly,

> Ramik . . . had access to [the father's] indicated perpetrator status . . . , yet [was] willing to let all three . . . children go with him, almost blindly . . . out of convenience, despite warnings . . . regarding his past history with one of the children, putting them in immediate danger. Ramik showed perilous decision-making for these children at this time[.]

Complaint (Ramik), 6/27/23, Affidavit of Probable Cause, at 10 (pagination supplied).

Having outlined some of the facts that underlined the Commonwealth's concern, we next review the cases' combined procedural history. The Commonwealth charged Appellees as discussed hereinabove. Prior to their respective preliminary hearings before the magisterial district courts, Appellees filed a joint motion to quash the criminal complaints and requested that the matter be assigned to the miscellaneous docket in the Lackawanna Court of Common Pleas. Following a hearing that included the cross-examination of Detective Garrity[5] and the submission of briefs, on January 12,

_____

[5] The common pleas court stated that the reason for Detective Garrity's testimony was "for the purpose of identifying those portions of the [OYFS]
*(Footnote Continued Next Page)*

2024, the common pleas court granted the motion and ordered the criminal complaints to be quashed and dismissed. Critically, the court determined that, since the charges arose as a consequence of their employment with OYFS, Appellees were "providing services" as contemplated by the immunity provision outlined in 23 Pa.C.S. § 6318(b), which we reproduce *infra*.

This timely appeal followed. The Commonwealth complied with the trial court's order to file a concise statement of errors on appeal pursuant to Pa.R.A.P. 1925(b), preserving four substantive issues that it presents for our review as follows[6]:

> 1. Whether the trial court erred in failing to consider the placement of the immunity statute — 23 Pa.C.S. § 6318 — within Title 23, Subchapter B, entitled "Provisions and Responsibilities for Reporting Suspected Child Abuse", which placement indicates that § 6318 is limited to acts of reporting of suspected child abuse?
>
> 2. Whether the trial court erred in extending immunity to [Appellees] based on the presumption of good faith where Pennsylvania case law establishes that the presumption of good faith can be overcome and the court failed to do a factual assessment of [Appellees'] actions and inactions via a full and fair hearing where [Appellees'] bad faith would have been evident and the good faith presumption overcome despite the Commonwealth's request for such a hearing?
>
> 3. Whether the trial court erred in classifying the [Appellees'] acts and omissions as "within the normal course and scope of employment" as constituting the statutory requirement of

---

files upon which she based her Affidavit of Probable Cause[.]" N.T., 9/1/23, at 49.

[6] Since the appeal plainly flowed from a final order, we omit the question concerning appealability and renumber the remaining, substantive issues for ease of our review.

"providing services" pursuant to 23 Pa.C.S. § 6318(b) in that the instant allegations of criminal conduct placed [Appellees] outside the legislative purpose of the Child Protective Services Law [CPSL], and therefore they cannot avail themselves of immunity from prosecution?

4. Whether the trial court erred in finding absolute immunity under 23 Pa.C.S. § 6318(b) by failing to analyze whether there was an objectively reasonable basis for [Appellees] actions?

Commonwealth's brief at 4. [7] We address these issues collectively.

While we typically review the trial court's decision to grant or deny a motion to dismiss criminal charges for an abuse of discretion, the Commonwealth's assertion that Appellees are not entitled to immunity pursuant to the CPSL presents a question of law, which we review *de novo*. *Commonwealth v. Renninger*, 269 A.3d 548, 562 (Pa.Super. 2022) ("A challenge concerning the application of a statute . . . presents a question of law for which our standard of review is *de novo* and our scope of review plenary."). As we recently reiterated,

> Statutory interpretation is, of course, conducted in accordance with the Statutory Construction Act:
>
> Pursuant to that Act, "the object of all statutory interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). When the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. *Id*. §

---

[7] Coyne, Helcoski, and Krauser filed a single, consolidated brief in this matter. Walker and Ramik each filed an individual brief that largely overlap with one another and the consolidated brief. The Pennsylvania District Attorneys Association filed an *amicus* brief in favor of the Commonwealth's position that § 6318(b) does not protect the failure to act.

1921(b). When, however, the words of a statute are not explicit, a court may discern the General Assembly's intent by examining considerations outside of the words of the statute. *Id*. § 1921(c). In addition, when construing a statute, we must, if possible, give effect to all of its provisions. *Id*. § 1921(a).

The Statutory Construction Act also instructs that, in ascertaining the intention of the General Assembly in enacting a statute, several presumptions may be used. *Id*. § 1922. Among those presumptions is that "the General Assembly intends the entire statute to be effective and certain." *Id*. § 1922(2). We also may presume that the General Assembly does not intend absurd or unreasonable results. *Id*. § 1922(1). As this Court wisely stated over sixty years ago, to avoid such results, we "must read statutes in the light of reason and common sense." *Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788, 789 (1959). Further, we may presume that the General Assembly does not intend to violate the Constitution of the United States or this Commonwealth. 1 Pa.C.S. § 1922(3).

*Commonwealth v. Kiessling*, ___ A.3d ___, 2025 WL 2103732 (Pa.Super. 2025) (citation omitted) (cleaned up).

On all counts, Appellees assert immunity from criminal prosecution under 23 Pa.C.S. § 6318(b). That provision states:

Departmental and county agency immunity.--An official or employee of the department or county agency who refers a report of suspected child abuse for general protective services to law enforcement authorities **or provides services as authorized by this chapter** shall have immunity from civil and criminal liability that might otherwise result from the action.

23 Pa.C.S. § 6318(b) (emphasis added).[8]  As discussed further *infra*, the trial

court and Appellees focus on the reference to "this chapter," *i.e.*, the CPSL, to

_____

[8] In whole, the immunity provision provides:

(a) General rule.--A person, hospital, institution, school, facility, agency or agency employee acting in good faith shall have immunity from civil and criminal liability that might otherwise result from any of the following:

(1) Making a report of suspected child abuse or making a referral for general protective services, regardless of whether the report is required to be made under this chapter.

(2) Cooperating or consulting with an investigation under this chapter, including providing information to a child fatality or near-fatality review team.

(3) Testifying in a proceeding arising out of an instance of suspected child abuse or general protective services.

(4) Engaging in any action authorized under section 6314 (relating to photographs, medical tests and X-rays of child subject to report), 6315 (relating to taking child into protective custody), 6316 (relating to admission to private and public hospitals) or 6317 (relating to mandatory reporting and postmortem investigation of deaths).

(b) Departmental and county agency immunity.--An official or employee of the department or county agency who refers a report of suspected child abuse for general protective services to law enforcement authorities or provides services as authorized by this chapter shall have immunity from civil and criminal liability that might otherwise result from the action.

(c) Presumption of good faith.--For the purpose of any civil or criminal proceeding, the good faith of a person required to report pursuant to section 6311 (relating to persons required to report

*(Footnote Continued Next Page)*

reason that all actions performed in the course of Appellees' employment are shielded from liability.

Specifically, the trial court reasoned,

> The Commonwealth argues that the immunity conferred by 23 Pa.C.S. § 6318 only applies to county agency or department employees or officials "who refers (sic) a report of suspected child abuse." (Commonwealth Brief, p.26). The Commonwealth argues that the immunity only applies "when a report of suspected child abuse takes place." (*Id.,* p.27). Thus, the Commonwealth argues that [Appellees'] arguments are illogical and inappropriate and for certain do not extend to the work of OYFS in totality. The Commonwealth argues that we should not, as [Appellees] do, isolate some ostensibly helpful text without examining the text too closely. The Commonwealth asks that we "examine the breadth of the applicable statutory provisions." This we have done. "An official or employee of the department or county agency who refers a report of suspected child abuse for general protective services to law enforcement authority **or provides services as authorized by this chapter** shall have immunity from civil and criminal liability that night otherwise result from the action." 23 Pa.C.S. § 6318(b) (emphasis supplied). Contrary to the argument of the Commonwealth, the immunity argued by [Appellees] is not simply limited to one who "refers a report of suspected child abuse" but, more generally, "provides services as authorized by this chapter." . . . [T]here is no dispute that [Appellees] at all times were acting within the course and scope of their employment. There is also no dispute that they "provide services" as contemplated in the statute. We therefore conclude that they are indeed immune from these prosecutions.

Trial Court Opinion, 2/4/24, at 6-7 (emphasis in original).

---

suspected child abuse) and of any person required to make a referral to law enforcement officers under this chapter shall be presumed.

23 Pa.C.S. § 6318.

With the forgoing principles in mind, we address the Commonwealth's contention that the trial court erred in finding that § 6318(b) precluded criminal prosecution in these matters. The Commonwealth's primary argument asserts that § 6318(b) immunity is limited to the affirmative act of reporting child abuse. **See** Commonwealth's brief at 22-29. The implication of this assertion is that immunity would not attach where, as here, the criminal charges are related to the caseworkers' alleged inaction. It continues that even if immunity were to extend to Appellees' transgressions, the trial court erred in failing to make a factual determination that the Commonwealth could not rebut the statutory presumption that Appellees acted in good faith as outlined in § 6318(c), which provides in pertinent part, "the good faith of a person required to report pursuant to section 6311 (relating to persons required to report suspected child abuse) and of any person required to make a referral to law enforcement officers under this chapter shall be presumed." 23 Pa.C.S. § 6318; **see** Commonwealth's brief at 29-39. Relatedly, it criticizes the court for failing to assess whether Appellees' actions satisfied the objectively reasonable standard associated with the principle of qualified immunity enshrined in federal law. **Id**. at 47-60.

The Commonwealth next asserts that the trial court erred in equating the fact that Appellees were acting within the course and scope of their employment as OCYF caseworkers with the provision stating that agency employees are immune from civil and criminal liability resulting from actions

committed in "provid[ing] services as authorized by this chapter[.]" **See** Commonwealth's brief at 39-47. Ultimately, the Commonwealth contends that the crux of the criminal charges is that Appellees failed to provide services authorized by the CPSL in the face of suspected child abuse and serious physical neglect. Accordingly, it reasons that immunity does not apply.

Neither the Commonwealth, Appellees, nor the trial court differentiate between EWOC and failure to report suspected child abuse in determining whether immunity attaches pursuant to § 6318(b). However, due to the disparate nature of the allegations underlying the two offenses, we address them separately, beginning with EWOC.

A.    **EWOC**

The Pennsylvania Crimes Code defines EWOC, in relevant part, as follows: "A parent, guardian, or other person supervising the welfare of a child under [eighteen] years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection, or support." 18 Pa.C.S. § 4304(a)(1). We recently confronted the identical issue in **Kiessling**, 2025 WL 2103732, and held that, as a matter of first impression, the immunity provisions outlined in § 6318(a) and (b) of the CPSL precluded the Commonwealth's criminal prosecution of three agency employees, who were charged with EWOC in

relation to two dependent children, Z.M. and I.M.[9]  The children had been under the agency's supervision since February 2019 following a general protective services referral and emergency protective order due to their mother's inability to adhere to the agency's safety plan.  During the pertinent period, the appellees received concerns from the foster mother and various service providers regarding the mother's parenting ability.  Notwithstanding those apprehensions, the appellees continued to support reunification, and in February 2020, the children returned to their mother's home under the agency's oversight.  Three months later, the mother murdered the younger sibling.

Following a grand jury presentment and recommendation, the Commonwealth charged the appellees with EWOC based, in part, on their deficient supervision of the children in light of the fears that were brought to their attention.  The appellees invoked § 6318(b), and the trial court dismissed the information.  The Commonwealth appealed and, like the arguments raised in the case at bar, the Commonwealth asserted that the plain language of § 6318(b) did not apply to the appellees' alleged failure to act on the children's behalf.  Rejecting the Commonwealth's statutory interpretation, this Court concluded that the underlying factual allegations concerned the appellees' purportedly defective administration of protective services to the children as

---

[9] As **Kiessling** was only recently decided by this Court, neither the Commonwealth nor the trial court had the benefit of that opinion.

authorized by the CPSL. Thus, we held that the Commonwealth's theory of criminal liability triggered § 6318(b) immunity. We reasoned,

> Instantly, the Presentment, criminal complaint, and information allege that Appellees engaged in criminal behavior that does, in fact, implicate the provision of services authorized by the CPSL and the Commonwealth is seeking to prosecute them for those precise actions. Indeed, the Presentment notes that the children were placed in the protective custody of ACCYS because of a general protective referral, the criminal complaint charged Appellees with specific allegations of failing to advise the supervising court of Mother's inability to parent safely, and the information asserted that those failures led to the death of I.M. and the continuing risk of death to Z.M. *See* Criminal Information, 10/23/23 at 1. As all those assertions involved services Appellees provided under the CPSL, we do not disturb the trial court's conclusion that immunity attached based on the Commonwealth's theory of criminal liability.

*Id*. at *9.

Here, the Commonwealth charged Appellees with EWOC based upon their alleged deficient supervision of the children in the conditions that we outlined *supra*. Essentially, the criminal complaints and supporting affidavits of probable cause averred that Appellees ignored and/or failed to investigate instances of suspected child abuse and serious physical neglect that they encountered while performing their obligations to the respective children in accordance with the CPSL.

Like the Commonwealth's theory of criminal liability in **Kiessling**, inasmuch as the alleged actions and omissions fell within the scope of Appellees' obligations authorized by the CPSL, § 6318(b)'s plain, unambiguous language extends to them immunity from prosecution for those services.

Indeed, as Appellees accurately observe, "There would be no arguable basis for legal culpability . . . outside of [Appellees'] . . . provision of service under the [CPSL]." Appellees' (Coyne, Helcoski, and Krauser) brief, at 12 n.6. Accordingly, the trial court did not err in concluding that, pursuant to the plain meaning of § 6318(b), Appellees are immune from prosecution for EWOC based on their involvement in providing protective services to the children as authorized by the CPSL. *See* Trial Court Opinion, 2/4/24, at 6-7.

In reaching this conclusion, we reject both: (1) the Commonwealth's contention that § 6318(b) immunity only protects individuals who report suspected child abuse pursuant to the provisions and responsibilities outlined in Subchapter B of the CPSL; and (2) the separate assertion that the trial court erred in failing to make a factual determination that the Commonwealth could not rebut the statutory presumption that Appellees acted in good faith. We address these arguments *seriatim*.

The Commonwealth's first contention relates to § 6318's placement in the statute. The Pennsylvania Legislature divided the CPSL into five operative subchapters that are designated Subchapter A through Subchapter E, respectively. As Subchapter B concerns the responsibilities for reporting suspected child abuse,[10] the Commonwealth argues that the placement of the

_____

[10] The portion of CPSL that is relevant to this aspect of the Commonwealth's argument provides:

*(Footnote Continued Next Page)*

- 18 -

immunity provision within Subchapter B indicates that immunity would not attach where, as here, the criminal charges are related to the caseworkers' defective provision of protective services, which are addressed in Subchapter D. The Commonwealth articulates this position as follows: "Had the Legislature wanted immunity to attach to [case]workers carrying out their employment/work/labor, *i.e.,* 'providing services,' [it] surely would have housed the immunity language in . . . [S]ubchapter [D] which describes, in significant detail, the actual services they are statutorily required to carry out, and not [Subchapter B,] which only describes the reporting of child abuse." Appellant's brief at 25.

The Commonwealth's logic about the statute's organization is misplaced because § 6318's position in the statutory framework is irrelevant. Regardless

---

Subchapter B. (Provisions and Responsibilities for reporting Suspected Child Abuse)

§ 6311.      Persons Required to Report Suspected Child Abuse.
§ 6311.1.   Privileged Communications.
§ 6312.      Persons Encouraged to Report Suspected Child Abuse.
§ 6313.      Reporting Procedure.
§ 6314.      Photographs, Medical Tests and X-Rays of Child Subject to Report.
§ 6315.      Taking Child into Protective Custody
§ 6316.      Admission to Private and Public Hospitals.
§ 6317.      Mandatory Reporting and Postmortem Investigation of Deaths.
§ 6318.      **Immunity from Liability**.
§ 6319.      Penalties.
§ 6320.      Protection from Employment Discrimination.

23 Pa.C.S. §§ 6311-6320 (emphasis added.

of the subchapter in which the Legislature elected to include § 6318, the immunity provision's operative language protects both the affirmative act of reporting child abuse **and** the caseworkers' actions in providing protective services, generally. Recall, § 6318(b) comprises two provisions: the first specifically protects an individual "who refers a report of suspected child abuse" and the second, which applies here, extends to an individual "who provides services as authorized by [the CPSL]." 23 Pa.C.S. § 6318(b). As it is beyond cavil that the statute's clear and unambiguous language extends immunity protections to caseworkers who provide services authorized by the CPSL, the Commonwealth's fixation with the immunity provision's locus outside of Subchapter D is unsound.

For similar reasons, we reject the Commonwealth's related assertion that § 6318(b)'s inclusion within Subchapter B creates an ambiguity in the plain meaning of the provision such that we must look to legislative intent to determine its proper application. **See** Commonwealth's brief at 25. A term is ambiguous if, "when read in context with the overall statutory framework in which it appears, [it] has at least two reasonable interpretations[.]" **Snyder Bros., Inc. v. Pennsylvania Pub. Util. Comm'n**, 198 A.3d 1056, 1073 (Pa. 2018) (citation omitted). Here, however, no ambiguity exists. As we explained in **Greenwood Gaming & Ent., Inc. v. Dep't of Revenue**, 306 A.3d 319, 329 (Pa. 2023) (cleaned up),

> While we must consider the statutory language in its full context before we assess ambiguity, we must not overlabor

- 20 -

to detect or manufacture ambiguity where the language reveals none. We strive to give effect to each word and are ever mindful that a court may not disregard unambiguous statutory language in service of what it believes to be the spirit of the law.

*See*, *e.g.*, 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). Thus, the Commonwealth's attempt to fashion ambiguity from the plain language of the statute finds no purchase here.

As to the argument concerning the lack of a good-faith determination, we addressed the identical issue in *Kiessling* and concluded, "Critically, unlike the narrow protection afforded by § 6318(a), which is based expressly on the "agency employee acting in good faith," the statutory language extending immunity in § 6318(b) simply does not implicate the good-faith requirement." *Kiessling*, at * 8. Indeed, the Commonwealth concedes this reality in its brief in asserting that the trial court erred in applying the good faith presumption. Specifically, it contends that § 6318(c) only applies in situations where an individual initiated an actual report of suspected child abuse, and not, as here, where that individual failed to act on the child's behalf. *See* Commonwealth's brief at 32. It reasons, "The good faith presumption of section (c) evolves from the good faith requirement of section (a) which, again, calls for the making of a report, cooperating in an investigation, *etc*. Here, where the charges against the [Appellees] resulted from none of these things, the presumption of good faith in § 6318(c) is simply inapplicable." *Id*. We agree

with this aspect of the Commonwealth's argument and reiterate that a factual assessment of any rebuttal evidence was unnecessary where immunity is extended pursuant to § 6318(b).[11]

Even if the determination was warranted in this case, nothing in the criminal complaints relating to EWOC or the supporting documentation asserts that Appellees acted with bad faith. Furthermore, to the extent that the Commonwealth assails the trial court for failing to schedule an evidentiary hearing to assess Appellees' performance, the CPSL requires no such hearing as a condition precedent to the presumption's application. *See* 23 Pa.C.S. § 6318(c). Accordingly, the Commonwealth's arguments are unconvincing.

Finaly, we reject the Commonwealth's contention that the trial court erred in equating Appellees' mere employment with OYFS to "provid[ing] services as authorized by [the CPSL.]" as outlined in § 6318(b). ***See*** Commonwealth's brief at 41-42. While we agree with the Commonwealth's initial premise that Appellees frequently performed services outside of the

_____

[11] Likewise, we are unpersuaded by the Commonwealth's related contention that the trial court erred in failing to analyze whether Appellees had an "objectively reasonable basis" for their actions. First, the assertion is waived because the Commonwealth did not assert it at trial. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). Even if it were not waived, the argument fails because the authority that the Commonwealth cites in support of its position relates to qualified immunity, a doctrine that protects government officials from civil liability arising from the performance of their discretionary functions. Instantly, however, Appellees invoked a specific statute that extended absolute immunity that neither required nor implicated such a balancing test.

CPSL that do not implicate the immunity provisions, *e.g.*, administering the reunification services to the family under the Juvenile Act, those unrelated services were not the basis of any criminal charges filed in these cases. Thus, while the Commonwealth is correct that the trial court's statement that immunity attached to Appellees simply because of their employment with OCYS is inaccurate, the misstatement is harmless in light of the fact that the court also found Appellees "provided services as contemplated in the statute." More importantly, the essence of the Commonwealth's criminal charges is that Appellees neglected their duty to protect the children, *i.e.*, a service Appellees performed as authorized by the CPSL. *See* Trial Court Opinion, 2/4/24 at 7.

Having determined that Appellees are immune from prosecution for EWOC based on their allegedly-flawed provision of protective services, we next determine whether immunity extends to their specific failure to report suspected child abuse as mandated by 23 Pa.C.S. §§ 6311 and 6319. For the reasons explained *infra*, we hold that it does not.

B.  **Failure to Report Suspected Child Abuse**

As outlined above, the Commonwealth contests the trial court's grant of immunity as contrary to the purpose of the CPSL and inconsistent with the immunity provision's inclusion within Subchapter B of the CPSL, which also embraces sections of the law that identify mandated reporters, outlines those reporting obligations, and establishes criminal penalties for failure to comply. This argument requires us to review the interplay among the statute's purpose

and the various sections that comprise Subchapter B. We begin by reviewing the pertinent provisions.

As if it were not self-evident from its short title, the legislature outlined the purpose of the CPSL thusly,

> (a) Findings.--Abused children are in urgent need of an effective child protective service to prevent them from suffering further injury and impairment.
>
> (b) Purpose.--It is the purpose of this chapter to encourage more complete reporting of suspected child abuse; to the extent permitted by this chapter, to involve law enforcement agencies in responding to child abuse; and **to establish in each county protective services for the purpose of investigating the reports swiftly and competently, providing protection for children from further abuse and providing rehabilitative services for children and parents involved so as to ensure the child's well-being** and to preserve, stabilize and protect the integrity of family life wherever appropriate or to provide another alternative permanent family when the unity of the family cannot be maintained. It is also the purpose of this chapter to ensure that each county children and youth agency establish a program of protective services with procedures to assess risk of harm to a child and with the capabilities to respond adequately to meet the needs of the family and child who may be at risk and to prioritize the response and services to children most at risk.

23 Pa.C.S § 6302 (emphasis added).

Under the CPSL, child abuse is intentionally, knowingly or recklessly doing any of the following:

> (1) Causing bodily injury to a child through any recent act or failure to act.
>
> (2) Fabricating, feigning or intentionally exaggerating or inducing a medical symptom or disease which results in a potentially harmful medical evaluation or treatment to the child through any recent act.

(3) Causing or substantially contributing to serious mental injury to a child through any act or failure to act or a series of such acts or failures to act.

(4) Causing sexual abuse or exploitation of a child through any act or failure to act.

**(5) Creating a reasonable likelihood of bodily injury to a child through any recent act or failure to act.**

**(6) Creating a likelihood of sexual abuse or exploitation of a child through any recent act or failure to act.**

**(7) Causing serious physical neglect of a child.**

(8) Engaging in any of the following recent acts:

(i) Kicking, biting, throwing, burning, stabbing or cutting a child in a manner that endangers the child.

(ii) Unreasonably restraining or confining a child, based on consideration of the method, location or the duration of the restraint or confinement.

(iii) Forcefully shaking a child under one year of age.

(iv) Forcefully slapping or otherwise striking a child under one year of age.

(v) Interfering with the breathing of a child.

(vi) Causing a child to be present at a location while a violation of 18 Pa.C.S. § 7508.2 (relating to operation of methamphetamine laboratory) is occurring, provided that the violation is being investigated by law enforcement.

(vii) Leaving a child unsupervised with an individual, other than the child's parent, who the actor knows or reasonably should have known:
(A) Is required to register as a Tier II or Tier III sexual offender under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders), where the victim of the sexual offense was under 18 years of age when the crime was committed.

(B) Has been determined to be a sexually violent predator under 42 Pa.C.S. § 9799.24 (relating to assessments) or any of its predecessors.

(C) Has been determined to be a sexually violent delinquent child as defined in 42 Pa.C.S. § 9799.12 (relating to definitions).

(D) Has been determined to be a sexually violent predator under 42 Pa.C.S. § 9799.58 (relating to assessments) or has to register for life under 42 Pa.C.S. § 9799.55(b) (relating to registration).

(9) Causing the death of the child through any act or failure to act.

(10) Engaging a child in a severe form of trafficking in persons or sex trafficking, as those terms are defined under section 103 of the Trafficking Victims Protection Act of 2000 (114 Stat. 1466, 22 U.S.C. § 7102).

23 Pa.C.S. § 6303(b.1) (internal footnote omitted) (emphases added).

In this vein, "Serious physical neglect" includes:

Any of the following when committed by a perpetrator that endangers a child's life or health, threatens a child's well-being, causes bodily injury or impairs a child's health, development or functioning:

(1) A repeated, prolonged or egregious failure to supervise a child in a manner that is appropriate considering the child's developmental age and abilities.

(2) The failure to provide a child with adequate essentials of life, including food, shelter or medical care.

23 Pa.C.S. 6303.

The Commonwealth charged Appellees with failing to report child abuse.

The CPSL outlines that offense as follows:

**(a) Failure to report or refer.—**

(1) A person or official required by this chapter to report a case of suspected child abuse or to make a referral to the appropriate

authorities commits an offense if the person or official willfully fails to do so.

(2) An offense under this section is a felony of the third degree if:

(i) the person or official willfully fails to report;

(ii) the child abuse constitutes a felony of the first degree or higher; and
(iii) the person or official has direct knowledge of the nature of the abuse.

(3) An offense not otherwise specified in paragraph (2) is a misdemeanor of the second degree.

(4) A report of suspected child abuse to law enforcement or the appropriate county agency by a mandated reporter, made in lieu of a report to the department, shall not constitute an offense under this subsection, provided that the report was made in a good faith effort to comply with the requirements of this chapter.

23 Pa.C.S. § 6319

A mandated reporter is "[a] person who is required by this chapter to make a report of suspected child abuse." 23 Pa.C.S § 6303. As "[a]n employee of a social services agency who has direct contact with children in the course of employment[,]" the CPSL obligated each of the Appellees to "make a report of suspected child abuse, . . . if the person has reasonable cause to suspect that a child is a victim of child abuse[.]" 23 Pa.C.S § 6311(a)(8).

A threshold principle of statutory construction is examining the statute as a whole and giving effect to all provisions. "[A]ll sections of a statute must be read together and in conjunction with each other, and construed with reference to the entire statute." *Penn Jersey Advance, Inc. v. Grim*, 962

A.2d 632, 634 (Pa. 2009) (cleaned up). Instantly, the trial court's conclusion that § 6318 extends immunity to Appellees to screen them from prosecution for violating their mandate to report suspected child abuse emasculates §§ 6311 and 6319, generally, and utterly vitiates the statutory obligations and sanctions set forth in those sections when applied to agency employees.

Moreover, the trial court's plain-language rationale for extending immunity to mandated reporters who ignored their statutory duty flouts the purpose of the CPSL, as outlined in § 6302. Ostensibly, § 6318 immunity is intended to encourage reporting of abuse by removing the fear of legal repercussions for those who comply with their reporting obligations. In contrast, § 6319 imposes strict requirements on mandated reporters to ensure that suspected abuse is promptly reported, and it holds them accountable through criminal penalties, including a second degree felony for multiple violations. It would be incongruous to interpret the statute as guarding individuals from liability for failing to fulfill their explicit statutory mandate to report suspected abuse. Rather than sanction noncompliance, we construe the statute as reconciling the immunity provision with each of § 6302 (purpose of CPSL), § 6311(mandated reporters), and § 6319 (penalties for failing to report). Accordingly, we hold that § 6318(b)'s grant of immunity to agency caseworkers who "provide service as authorized by [the CPSL]" does not shield from liability a mandated reporter's violation of § 6319. This construction ensures that each of the three provisions continues to have legal effect that

aligns with the statute's purpose of safeguarding children from further abuse and avoids the absurd result of protecting a person who failed their statutory duty to report. *See* 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions."); 1 Pa.C.S. § 1921(1) (crafting presumption "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.").

As the *amicus* cogently argued,

> The purpose [of the CPSL] is to create an atmosphere which promotes a child protection mentality and a system which gives preference to over-investigating unfounded reports as opposed to one of under-reporting founded allegations. There is nothing in the purpose of the Act or the text of the immunity provision which indicates it is intended to provide broad immunity to those who accept positions of authority with which they are required to decisively act with a bias towards providing protection and services, but who then inexcusably fail to fulfill the duties and obligations of their office.

*Amicus* brief at 12-13. Since the trial court's statutory interpretation thwarts the CPSL's purpose of defending children from child abuse, the court erred in concluding that Appellees were immune from prosecution for failing to report or refer suspected child abuse. Plainly, § 6318(b) does not extend immunity to a mandated reporter who is charged pursuant to § 6319.

In sum, unlike the allegations underlying EWOC, which fundamentally assail the manner that Appellees performed their jobs, the charges relating to Appellees' specific failure to report child abuse does not implicate the exercise of discretion in the provision of protective services. As mandated reporters, Appellees had a compulsory duty to report suspected child abuse, including

serious physical neglect. Thus, while both offenses may implicate the provision of services under the CPSL, we find no plausible argument that § 6318(b) exempts Appellees, five mandated reporters, from criminal liability for disregarding their statutory obligation to report suspected child abuse.

Accordingly, we vacate the portion of the trial court order quashing and dismissing the criminal complaints charging Appellees with various counts of failure to report or refer child abuse pursuant to § 6319. In all other respects, we affirm.

Order affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 09/11/2025